# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| JOHN MARGETIS, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CASE NO. 4:12cv753 |
| | § | |
| WILLIAM ROYAL FERGUSON, JR., et al. | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER AND REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Now before the Court are Defendants the Hon. William Royal Furgeson, Jr., the Hon. Stacey G.C. Jernigan, and Deputy U.S. Marshal John Barron's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim (Dkt. 16) and Defendants the Hon. William Royal Furgeson, Jr., the Hon. Stacey G.C. Jernigan, and Deputy U.S. Marshal John Barron's Motion to Strike Plaintiffs' Amended Original Complaint (Dkt. 26).

### Motion to Strike

Defendants' Motion to Strike was filed on May 9, 2013. Since then, Plaintiffs have failed to respond or take any other action in their case. For this reason alone, the Court can treat the relief requested by Defendants as unopposed and proceed accordingly. *See* E. D. Tex. L.R. CV-7(d).

The motion to strike the Amended Complaint, Docket Entry 24, (Dkt. 26) is GRANTED. Primarily, the amended complaint was filed on May 9, 2013 and the time for amending the complaint as a matter of course has passed. *See* FED. R. CIV. P. 15(a)(1) (party may amend once 21 days after

filing of original complaint – here Plaintiffs filed suit on December 4, 2012 – or 21 days after the filing of a motion to dismiss – here, Defendants' motion was filed on March 21, 2013). Plaintiffs have not sought leave of court to amend, nor in all likelihood would such a request be granted, given the scandalous and impertinent allegations contained in the complaint. No showing has been made that justice would require the amendment requested. *See* FED. R. CIV. P. 15(a)(2). Plaintiffs' Original Complaint, filed on December 4, 2012, Docket Entry 1, is the live pleading in this action.

**Motion to Dismiss**

The Court *sua sponte* strikes paragraphs 13, 14 and 15 from Plaintiffs' complaint. Exercising the right under FRCP Rule 12(f), the Court strikes that portion of the pleading which is nothing short of impertinence or scandalousness. A pleading or portion thereof qualifies as "scandalous" for the purposes of Rule 12(f) when it "generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." 2 *Moore's Federal Practice* § 12.37 [3], at 12–97; *see also In re 2 TheMart.com, Inc. Sec. Litig.,* 114 F.Supp.2d 955, 965 (C.D. Cal. 2000) (stating that a matter is "scandalous where it conveys 'a cruelly derogatory light on a party or other person.'"). The Court recognizes that a motion to strike is generally disfavored in this circuit. *U.S. v. Conley*, 689 F.3d 365 (5th Cir. 2012). Yet the Court finds that these unfounded and baseless allegations have no place in the complaint.

Accusing Defendants of fraud and deceit requires a sufficiency of pleading mandated by Federal Rule of Civil Procedure 9. Since the who, what, when, where, and how of this alleged conduct was not spelled out, the Court assumes it could not be spelled out, and as such, is merely

an attempt by the Plaintiffs to vent their venomous tirade in a public forum under the guise of a pleading. Further, the Court finds that these paragraphs detract from the dignity of those named individual defendants and further impugns the dignity of the judicial system.

The Court further finds that the Defendants' Motion to Dismiss (Dkt. 16) should be GRANTED in its entirety. Plaintiffs have filed no response to the Motion to Dismiss, instead filing – out of time – an amended complaint. That complaint has been stricken, and, as noted above, will not be permitted as a means to avoid a resolution of the motion to dismiss. As noted above, the lack of timely written opposition to the motion to dismiss in an of itself subjects the complaint to dismissal under the Court's local rules.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the very subject matter jurisdiction of this Court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). If a Rule 12(b)(1) motion is supported by evidence, the motion is deemed a factual attack on subject matter jurisdiction, and the court does not presume that the allegations in the complaint are true. *Patterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Thus Plaintiffs, when presented with the motion supported by the evidence attached, bear the burden of proving that subject matter jurisdiction exists. *Id.*

There is no evidence to support jurisdiction. The Court agrees that Plaintiffs' tort claims for defamation, infliction of emotional distress and civil conspiracy must be brought within the parameters of the Federal Tort Claims Act. *See generally* 28 U.S.C. § 1346 (b)(1). Since all named Defendants are employees of the government, suit must be brought under the Act. Further, upon certification by the Attorney General or his delegatee that the employee was acting within the scope of his or her office or employment at the time of the incident, the action shall be one deemed against

the United States, and the United States shall be instituted as the sole defendant. 28 U.S.C. § 2679(d)(1)(2). Exhibit "O" to the motion contains the requisite certification. *See* Dkt. 16-15. Therefore, the tort claims against the federal judges and marshals should be dismissed, and the United States substituted as a proper defendant.

The tort claims must also be dismissed against the United States. Since sovereign immunity is strictly construed in the government's favor, there is no recognized claim for libel or slander. *See generally Atorie Air, Inc. v Fed. Aviation Admin*, 942 F.2d 954, 957 (5th Cir. 1991). *See also* 28 U.S.C. § 2680(h). Even if the claims could proceed, such would still be subject to dismissal.

Here, the only "slanderous" statements referred to are that one or more individuals, including Margetis, made death threats against Judge Jernigan and that there was an insinuation that A. Baron was involved in criminal conduct. A statement is slander per se if the statement imputes the commission of a crime, the contraction of a loathsome disease, or sexual misconduct, or causes injury to a person's office, business or profession. *In re Jennings*, 203 S.W.3d 32, 36 (Tex. App. – San Antonio 2006, orig. proceeding). *See also Hancock v. Variyam,* 400 S.W.3d 59, 62 (Tex. 2013). The question of whether statements are slander per se is generally a matter of law to be decided by the court. *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,* 219 S.W.3d 563, 581 (Tex. App. – Austin 2007, pet. denied). If the plaintiff is a private individual, the plaintiff must show the defendant acted with negligence regarding the truth of the alleged statement. *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

As to Plaintiff A. Baron, no slanderous statements are identified. His conclusory allegations

cannot justify a viable pleading for slander. As to Plaintiff Margetis, statements made during an investigation by U.S. Marshals concerning a serious offense of threats of death against a federal judge are in the nature of either a judicial or quasi judicial proceeding and are absolutely privileged. *See generally Putter v. Anderson*, 601 S.W. 2d 73 (Tex. Civ. App.– Dallas, 1980, writ ref. n.r.e). Thus, no matter how viewed, Plaintiffs have no cause of action for slander against any party.

Plaintiffs' allegation of intentional infliction of mental distress must also be dismissed irrespective of the Federal Tort Claims Act. Intentional infliction of emotional distress is a "gap-filler" tort, created to permit recovery in "those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann–La Roche, Inc. v. Zeltwanger,* 144 S.W.3d 438, 447 (Tex. 2004). This tort's "clear purpose" is "to supplement existing forms of recovery by providing a cause of action for egregious conduct" that might otherwise go unremedied. *Id.* (quoting *Standard Fruit and Vegetable Co. v. Johnson,* 985 S.W.2d 62, 68 (Tex. 1998)). However, the tort "should not be extended to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines." *Id.* As a "gap-filler" tort, intentional infliction of emotional distress was never intended as an easier and broader way to allege claims already addressed by our civil and criminal laws, nor was it intended to replace or duplicate existing statutory or common law remedies. *See id.; Draker v. Schreiber,* 271 S.W.3d 318, 322 (Tex. App.– San Antonio 2008, no pet.). "Thus, if the gravamen of a plaintiff's complaint is another tort, a claim for intentional infliction of emotional distress claim will not lie regardless of whether the plaintiff succeeds on, or even makes the alternate claim." *Draker,* 271 S.W.3d at 322.

Here, Plaintiffs claim that Defendants harassed and intimidated numerous persons without any legitimate purpose. Plaintiffs do not claim they were harassed or intimidated. Further, the gravamen of their complaint is slander. Slander is a recognized theory of redress. Thus, the intentional emotional distress claim will not stand.

For the reasons stated above, the conspiracy claim must also fail. Section 2680(h) bars the conspiracy claim. Since civil conspiracy is a derivative tort under Texas law, the Plaintiffs must plead and prove another tort on which to base the claim. An actionable civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983). The essential elements of a civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996); *Triplex Commc'ns, Inc. v. Riley,* 900 S.W.2d 716, 719 (Tex. 1995). It is not the agreement itself but an injury to the plaintiff resulting from an act done pursuant to the common purpose that gives rise to a cause of action for civil conspiracy. *Carroll v. Timmers Chevrolet, Inc.,* 592 S.W.2d 922, 925 (Tex. 1979). In other words, recovery is not based on the conspiracy but on an underlying tort. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Thus, a conspiracy claim is a derivative tort. *Id.* To prevail on a civil conspiracy claim, the plaintiff must show the defendant was liable for some underlying tort. *See Trammell Crow Co. No. 60 v. Harkinson,* 944 S.W.2d 631, 635 (Tex. 1997). Independent liability for civil conspiracy does not exist. *Four Bros. Boat Works, Inc. v. Tesoro Petroleum Cos.,* 217 S.W.3d 653, 668 (Tex.App.– Houston [14th Dist.] 2006, no pet.). Since

the Court finds that the underlying torts of slander and intentional infliction of mental distress should be dismissed, Count III should also be dismissed.

The Court further finds that Plaintiffs have not exhausted their administrative remedies in pursuant of their futile claims. The FTCA bars claimants from bringing suits for money damages against the United States unless the claimant has first "presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). Exhibit "P" demonstrates that no such presentation has been made. *Se*e Dkt. 16-16. Therefore, as an alternative ground of dismissal, failure to exhaust administrative remedies bars recovery as to Counts I, II and III.

As yet another alternative ground of dismissal, the Court also finds that Counts 1 through VI should be dismissed as to Judges Jernigan and Fergueson since they have absolute, unmitigated and unqualified immunity for their judicial acts. *See Mays v. Sudderth*, 97 F.3d 107, 110-11 (5th Cir. 1996). At the heart of this spiteful lawsuit is one Plaintiff's obsession over the treatment of his mother and another Plaintiff's obsession over the treatment of his son. As Exhibit "L" notes, Alan Baron filed a previous lawsuit against the United States Marshal Service in the District of Columbia. *See* Dkt. 16-12. In his petition in that case, most of which complains about conduct not related to him, A. Baron says he was asked several questions by the United States Marshal Service and ICE. He was informed by the agencies that they would not stop trying to get information from him. A. Baron told the authorities he had not seen J. Baron (his son) in over 20 years but that the officials interrogated one or more of his neighbors. The complaint contains absolutely nothing amounting to slander as to A. Baron.

Interestingly, in the most recent complaint, A. Baron sets forth the same conduct but this time

laces it with allegations that there were false insinuations that **he** was involved in criminal activity. The District of Columbia suit was filed on May 3, 2012. The instant complaint was filed in December 2012 – some seven months later. Presumably, all facts were known to A. Baron at the time he filed the D.C. lawsuit. Curiously, there are no allegations as to any defamatory statements made concerning A. Baron. The "aggrieved" targets of the D.C. slander action are Michael Briscoe who was a co-plaintiff in that suit and J. Baron, the son of A. Baron whom he has not seen in twenty years and who was not a plaintiff in the D.C. lawsuit. No amount of paternal concern confers standing on A. Baron, even if there were some semblance of a claim to assert.

Near the time the D.C. petition was dismissed, Margetis and A. Baron filed a Verifierd (sic) Petition to Conduct Discovery and Take Prefiling Depositions for Investigation in the 219th Judicial District of Collin County, Texas. *See* Dkt. 16-14. Most of the Petition references grievances with Judge Ferguson and his in-court admonitions to J. Baron. Again, J. Baron is not a party to the petition.

In the petition, both Plaintiffs presumably appeared before a notary public and made sworn declarations. A. Baron states under oath that there was an insinuation made that one or more of the Petitioners (being only two) made death threats to Ferguson or Jernigan. There is absolutely no pleading filed by A. Baron in any other case which states he was ever implicated in any death threat.

In the end analysis, the gravamen of the dispute is nothing more than personal spite toward and dissatisfaction with the judicial system. The core of Plaintiffs' animosity toward these two judges lies in the judges' handling of matters within their jurisdiction. The judges are entitled to absolute immunity from suit. This Court could end the analysis now. Whether matters of sovereign

immunity, qualified immunity, judicial immunity, failure to state a claim or just plain lack of subject matter jurisdiction suffice, the Court believes that further discussion and ultimately strong sanctions are warranted.

Therefore, the Court next turns to Counts IV, V and VI of the Complaint. To the extent Plaintiffs have attempted to sue the various Defendants in their official capacity, such is barred. The Court lacks subject-matter jurisdiction over the official-capacity claims asserted in counts four through six under Rule 12(b)(1). Plaintiffs purport to sue each of the federal officials in both their individual and official capacities. *See* Dkt. 1 at ¶¶ 6-9. Sovereign immunity bars the official-capacity claims because those claims are really directed against the government itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) (RICO does not waive sovereign immunity of federal government); *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) (§ 1983 suits against federal government barred by sovereign immunity); *FDIC v. Meyer*, 510 U.S. 471, 486 (1996) (U.S. has not waived sovereign immunity for *Bivens* suits).

Count V alleges a claim for deprivation of rights. All Plaintiffs do is string a series of constitutional platitudes hoping to satisfy their pleading burden. This they fail to do. While Section 1983 provides a right of action for constitutional violations committed by a person acting under color of state law, it does not apply to federal officials acting under color of federal law. *See Resident Council of Allen Parkway Vill. v. U.S. Dep't of Housing and Urban Dev.*, 980 F.2d 1043, 1053 (5th Cir. 1993).

Further, the Court questions whether Plaintiffs have standing to assert a claim for damage

to "their businesses." A. Baron claims to own an interest in Pets Are Inn. First, there is nothing substantive alleged how his dog care business has been affected by agents' investigative techniques. Second, if the business is a corporation, then it is the *corporation* which has suffered injury – not him personally. There are no allegations that his stock has been diluted or that there has been a decline in earnings or value. Even if the agents' interrogation of A. Baron's neighbors caused so much concern that people feared for the safety of their pets and refused to board at the Inn, it is not A. Baron's standing to sue. Of course Margetis never identifies what business he operates, the legal entity which he operated, or the losses he sustained or how they were sustained, etc. Plaintiffs fail to state a claim upon which relief may be granted. Therefore, Count V should be dismissed for failure to state a claim for relief as an alternative ground for dismissal.

Count VI alleges that Defendants have retaliated against Margetis and A. Baron for exercise of their free speech. Plaintiffs call their speech whistle blowing. As to A. Baron, there is no pleading as to what speech he refers to in the Complaint. All that can be gleaned is that A. Baron began reporting information and providing testimony about the Judges to law enforcement agencies, requesting prosecution. Since the content of the so called "protected communication(s)" is not disclosed, that claim as brought by A. Baron should be dismissed. *See Brown v. U.S. Postal Serv*., 338 F. App'x 438, 441 (5th Cir. 2009).

As to Margetis, the claim should be dismissed for the same reasons. The only pleadings of substance by Margetis reveal that, when he tried to provide information, a Jane Doe told him it was of no consequence to her and that the agents were done. The same was told to his mother. In April, a John Doe supposedly told him to "get a life" when he continued to try and report the crimes. Dkt.

1 at ¶31.  He adds that John Doe attempted to coerce him to withhold testimony and information but adds nothing more to his story.  Margetis has failed to demonstrate the specific communication made, how that communication was suppressed, or how the specific communication resulted in retaliation.  All Margetis can plead are very general and unsubstantiated allegations.  It is just not enough.  In federal court, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed.2d 929 (2007).

Moreover, both Plaintiffs fail to allege facts showing that their speech was actually chilled. *See Singer v. Fulton County Sheriff*, 63 F.3d 110,120 (2nd Cir. 1995).  Both Margetis and Baron have filed numerous petitions or complaints, all after the conduct complained about.  In the Verifierd (sic) Petition to Conduct Discovery and Take Prefiling Depositions for Investigation filed in state court, only Margetis states that he began reporting unlawful activity.  *See* Dkt. 16-14.  He then states under oath that it **appears** to have been retaliation.  *Id.* at ¶10.  Margetis goes on to state that, in November 2010, he began "cooperating" with the media and law enforcement, providing statements and testimony about the judges' unlawful activities.  *Id.* at ¶22.  There is no real clear allegation of any specific communications in the petition.  Most of the complaint has to do with J. Baron, who was not even a party to the petition.  Of course, nothing is sufficiently identified as to A. Baron, and Margetis simply has no standing to assert anything on J. Baron's behalf.  Most of Margetis's focus (other than his mother's bankruptcy case) centers on J. Baron, who evidently is occupied with his own legal matters.  There are no free speech claims, and they should be dismissed.

Plaintiffs' RICO claim, Count IV, also fails. Section 1962 speaks of RICO persons and a RICO enterprise. *See TransFirst Holdings, Inc. v. Phillips,* No. 06–2303, 2007 WL 1468553, *3 (N.D.Tex. May 18, 2007). The RICO person is the defendant while the RICO enterprise can be either a legal entity or an association-in-fact. *See St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 (5th Cir.2000). "The [RICO] defendant who commits the predicate offenses must also be *distinct* from the enterprise." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989) (emphasis added). "An association-in-fact enterprise (1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization, and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 855 F.2d 241, 243 (5th Cir. 1988). As to the first prong, "[w]hen the relationship between members of an alleged enterprise does not exist for purposes other than simply to commit the predicate acts and reap the resultant rewards, this requirement is not met." *Young v. Scruggs,* 2010 WL 2301641, *7 (S.D. Miss. 2010). Plaintiffs' Complaint here has not characterized the enterprise as "an entity separate and apart from the pattern of activity in which it engages." *Atkinson v. Anadarko* Bank & Trust Co., 808 F.2d 438, 441 (5th Cir.1987). Based on the pleadings, and on that ground alone, Plaintiffs fail to state a claim upon which relief may be granted as to RICO.

Further, to support a claim for RICO, Plaintiffs must allege how they were injured. Lost opportunity damages are not enough. *See In re Taxable Mun. Bond Securities Litigation*, 51 F.3d 518,523 (5th Cir. 1995). Nor are speculative damages recoverable. *Id.* Claimed losses to goodwill and business reputation are also not compensable under RICO. *Parker v. Learn Skills Corp*., 530

F.Supp. 2d 661 (D. Del. 2008).

Plaintiffs must also show that the alleged RICO violations proximately caused their injury. *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S.Ct. 1311 (1992). A complaint may be dismissed for failure to plead proximate causation adequately. *See generally Texas Carpenters Health Ben. Fund v. Philip Morris, Inc.*, 21 F.Supp.2d 664 (E.D. Tex. 1998). The allegation must describe a concrete financial loss. *See Patterson v. Mobil Oil. Corp.*, 335 F.3d 476,492 n.16 (5th Cir. 2003). Plaintiffs' conclusory allegations are unaccompanied by assertions of even general facts to show injury to satisfy the RICO standing requirement. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998). The Court finds that the RICO action is likewise subject to dismissal on for failure to demonstrate standing.

The Court likewise finds that allegations as to RICO cannot stand because Plaintiffs cannot sufficiently plead racketeering activity. The Court has stricken the paragraphs alleging extortion, etc. Under 18 U.S.C. § 1512, most of the conduct proscribed refers to a interference involving an official proceeding. Section 1512(d)(2) provides criminal penalties if a person intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from reporting a law enforcement officer of judge of the United States the commission or possible commission of a Federal offense. 18 U.S.C. § 1512(d)(2).

First, there is no pleading that Plaintiffs attempted to contact any judge. Second, there is no plausible explanation of what Federal offense Plaintiffs believe was committed. Plaintiffs repeatedly refer to crimes but not federal crimes. There is no pleading that anyone gave their consent for deprivation of property because of some wrongful act, force or threat. In the context of federal

crimes, extortion means obtaining property from another, with his consent, induced by some wrongful means. *U.S. v. Zhou*, 428 F.3d 361 (2nd Cir. 2005). No Plaintiff alleges here that he gave his consent. Therefore, there is no federal crime which can serve as the basis for a RICO action.

The Government moves for dismissal of Chastain in that he has never been served. Furthermore, as the Government points out, no valid claims have been asserted against him. Federal Rule of Civil Procedure Rule 4(m) allows the Court to dismiss a plaintiff on motion if service has not been effected within 120 days. *See* FED. R. CIV. P. 4(m). The Court could, on that basis alone, dismiss Chastain. However, the Court finds that Plaintiffs' claims against Chastain should be dismissed for all the reasons noted above to the served defendants, except as to the defense of absolute immunity. He should be dismissed from this action with prejudice.

The Doe Defendants have also not been served, nor have they been identified. The use of fictitious defendant pleading is disfavored in federal courts. *See Doe v. Blue Cross&Shield United of Wisconsin*, 112 F.3d 869,872 (7th Cir. 1997). *See also Taylor v Fed. Home Loan Bank Bd.*, 661 F.Supp. 1341, 1350 (N.D. Tex. 1986). Because no claims have been stated in Plaintiffs' complaint, and for the reasons noted above, all Doe defendants should be dismissed from this action with prejudice.

In the Court's opinion, after reviewing all the materials submitted, the Court finds that this suit was purely motivated by spite and animosity. There were no grounds to support Plaintiffs' allegations of crimes. Further, based on the pleadings filed, there are certainly inconsistencies in what these Plaintiffs were claiming. Because the Court finds that the conduct is so egregious, the Court refers this to the presiding U.S. District Judge with the recommendation to determine whether

a show cause hearing be held and sanctions against Baron and Margetis be imposed for filing an unjustified, vitreous and frivolous lawsuit.

The Court further directs that the Assistant United States Attorney serve a copy of this Report and Recommendation on the United States Attorneys for the Northern and Eastern Districts of Texas to determine whether further proceedings are warranted against Plaintiffs Margetis and Baron.

Therefore, the Court GRANTS Defendants' Motion to Strike (Dkt. 26) and recommends that Defendants the Hon. William Royal Furgeson, Jr., the Hon. Stacey G.C. Jernigan, and Deputy U.S. Marshal John Barron's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim (Dkt. 16) be GRANTED. All Defendants and Does should be dismissed with prejudice, and all costs are charged to Plaintiffs. Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 13th day of September, 2013.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE