**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| JOHN MARGETIS and | § | |
| ALAN E. BARON, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 4:12-cv-753 |
| | § | |
| HON. WILLIAM ROYAL FURGESON, JR., | § | |
| HON. STACEY G.C. JERNIGAN, LUKE | § | |
| CHASTAIN, JOHN BARRON, and | § | |
| DOES 1-20, | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR</u>

## <u>SANCTIONS</u>

Pending before the court is Defendants' Motion for Sanctions (Dkt. 34), Plaintiffs' Response (Dkt. 40), Defendants' Reply (Dkt. 41), and Plaintiffs' Sur-Reply (Dkt. 45). Also before the court is Plaintiffs' Emergency Motion Filing This Supplemental Objections to Defendant's Motion for Sanctions (Dkt. 93)[1] and Defendants' Response (Dkt. 94). The United States Magistrate Judge, in his Report and Recommendation on this matter (Dkt. 27), also recommended that this court consider sanctioning Plaintiffs for violating Federal Rule of Civil Procedure 11. The court held a hearing on Defendants' motion on March 21, 2014. However, due to the court's docket and high courtroom hours, the court has not been able to return to this case and finalize this lengthy order until now.  For the reasons set forth herein, Defendants' Motion for Sanctions (Dkt. 34) is **GRANTED**.

For the purposes of the record, Plaintiffs' Emergency Motion to Continue (Dkt. 82) is **DENIED**. Also pending before the court is Plaintiffs' Motion for Leave to File Excess Pages

---

[1] While Plaintiffs titled this filing as a "motion," it is simply additional briefing in opposition to Defendants' motion for sanctions. Plaintiffs did not seek leave of court to file the additional briefing. Nevertheless, the court will address the issues raised in Dkt. 93 as explained herein.

(Dkt. 84), which is **DENIED**, Plaintiffs' Motion for Clarification (Dkt. 88), which is

**GRANTED**, Plaintiffs' Emergency Motion for Docketing (Dkt. 92), which is **DENIED**, and

Plaintiffs' Emergency Motion Filing This Supplemental Objections to Defendant's Motion for

Sanctions (Dkt. 93) and Defendants' Response (Dkt. 94), which is **DENIED**.

## I.      BACKGROUND

It is important to begin a summary of this case with a brief description of some events

that occurred before its filing. Plaintiff John Margetis's mother, Mickey Margetis, previously

appeared before Judge Jernigan when she filed bankruptcy in the Northern District of Texas.

John Margetis appeared on his mother's behalf during a hearing in that case. Plaintiff Alan

Baron's son, Jeffrey Baron, has appeared before both Judge Furgeson and Judge Jernigan in

litigation related to a business contract dispute in the Northern District of Texas. Both cases were

particularly contentious.

Plaintiff Margetis, upset about events in his mother's bankruptcy case, began his

campaign against Judge Jernigan in 2011. In March 2011, John Margetis and Mickey Margetis

filed a judicial misconduct complaint against Judge Jernigan complaining of Judge Jernigan's

conduct during a December 2007 hearing.[2] The complaint was dismissed as frivolous in April

2011.[3] In the dismissal order, Chief Judge Jones cautioned that "[j]udicial misconduct

proceedings are not a substitute for the normal appellate review process, nor may they be used to

obtain reversal of a decision or a new trial."[4] John Margetis and Mickey Margetis filed a petition

for review of that decision in June 2011.[5] The dismissal was affirmed.[6]

---

[2] Dkt. 34-3.
[3] Dkt. 34-4.
[4] Dkt. 34-4 at 3.
[5] Dkt. 34-5.
[6] Dkt. 34-6.

In June 2011, Mr. Margetis's campaign continued when he and his mother together filed an adversary complaint in bankruptcy proceedings naming Judge Jernigan as a defendant.[7] The adversary complaint was dismissed by in September 2011. The bankruptcy court explained that

> John Margetis **lacks standing to complain** of the Bankruptcy Judges' conduct. He was not a creditor in either of his mother's prior bankruptcy cases. While he is upset about what he perceives as mistreatment that his mother allegedly received by the Bankruptcy Judge, he is not a person aggrieved by that conduct such that he has legal standing to sue. And, while the claims asserted by John Margetis purport to arise from the Bankruptcy Judge's handling of the 2005 Case and the 2007 bankruptcy case filed by his mother, both cases were dismissed long ago which ends bankruptcy jurisdiction as discussed above.
>
> While Mickey Margetis has standing to sue the Bankruptcy Judge since she was the person allegedly aggrieved by the Bankruptcy Judge's handling of her cases, this Court lacks subject matter jurisdiction to hear those claims due to the dismissal of both of her bankruptcy cases which, as noted previously, ended this Court's jurisdiction.[8]

Undeterred, John Margetis and Mickey Margetis filed a second judicial misconduct complaint against Judge Jernigan,[9] which they supplemented in September 2011.[10] The complaint was dismissed as frivolous and because it related directly to the merits of Judge Jernigan's decisions.[11] Chief Judge Jones added in her order,

> "[t]his is the Margetises' second merits-related and frivolous judicial misconduct complaint against Judge Jernigan in less than four months. Mickey K. and John A. Margetis are WARNED that should they jointly or separately file a further merits-related or frivolous complaint, their right to file complaints may be suspended

---

[7] *In re: Mickey K. Margetis, Debtor*, Case No. 11-03376-bjh, Compl. at 7 (Dkt. 1) ("Judge Stacey G.C. Jernigan allowed Mickey Margetis' attorney, James Polk to resign, and Mickey Margetis was left without counsel. And because of the untruthful opinion published by Judge Stacey Jernigan, which was done with bias and prejudice, has made it impossible as of the moment to obtain effective legal counsel. Judge Stacey Jernigan did not allow Mickey Margetis her fair day in Court with the agreed pretrial Order after she re-opened the above bankruptcy case. Judge Stacey Jernigan has been asked several times to recuse herself and she decided every time not to do so."). The complaint alleged claims of fraud (18 U.S.C. § 1001), Conspiracy against rights (18 U.S.C. § 241), civil conspiracy (42 U.S.C. § 1985).
[8] Dkt. 34-8 at 5 (emphasis added).
[9] Dkt. 34-9.
[10] Dkt. 34-10.
[11] Dkt. 34-11.

and, unless they are able to show cause why they should not be barred from filing future complaints, the suspension will continue indefinitely."[12]

On November 21, 2011, Judge Jernigan received a death threat at both her home and chambers. She immediately notified the United States Marshals Service, and the Marshals began an investigation. Jeffrey Baron and John Margetis were among the individuals investigated. During the course of their investigation, the Marshals interviewed Plaintiffs John Margetis as well as Alan Baron and his wife, Donna Baron, regarding their son, Jeffrey Baron.

This suit originated when the Barons filed suit in May 2012 against the United States Marshals Service in United States District Court for the District of Columbia.[13] Judge Jernigan and Judge Furgeson were not listed as Defendants in that suit, but the complaint contained allegations related to rulings the judges made in Mickey Margetis's bankruptcy and Jeffrey Baron's cases.[14] The plaintiffs failed to timely serve the defendants in that action, and the case was dismissed without prejudice.

In October 2012, Margetis and Alan Baron filed a petition in Texas state court seeking pre-suit discovery from Judge Jernigan, Judge Furgeson, and the two United States Marshals named in this suit (Luke Chastain and John Barron). Essentially the same allegations were alleged in the state court suit that the Barons had alleged in their initial suit. The state-court petition states, "Jernigan was judge presiding over a bankruptcy proceeding over the estate of Mickey Margetis, during which proceeding Jernigan made rulings that adversely affected

---

[12] Dkt. 34-11 at 4.

[13] *Michael Briscoe, Alan E. Baron, and Donna S. Baron v. United States Marshals Service, United States Department of Justice*, Case No. 1:12-cv-00849 (D.D.C. May 3, 2012).

[14] Dkt. 34-15 ¶ 8 ("On information and belief, Jernigan made unlawful rulings against Margetis' interest with the intent to enrich others at the expense of harming Margetis."); *Id.* ¶ 9 ("In the proceeding involving JBaron, Furgeson made threats of death to JBaron by means of the combined forces of the United States armed services and allegedly committed numerous unlawful acts against JBaron's financial interests and civil rights, ordering Mr. Baron not to hire any lawyer.").

Mickey Margetis and John Margetis' ("Margetis") financial interest."[15] Defendants removed the suit to this court on October 31, 2012 (Case No. 4:12-cv-686) and filed a motion to dismiss.[16] On November 26, 2012, Plaintiffs filed their own motion to dismiss the suit "in the interest of conserving judicial resources"[17] and did not respond to Defendants' motion. On November 29, 2012, Assistant United States Attorney, Bradley Visosky, attorney for Defendants, sent Plaintiffs a letter reiterating the arguments presented in Defendants' motion to dismiss and warning Plaintiffs that any future suit "will be viewed as nothing more than an effort to harass the federal officials and not to pursue legitimate claims" that would result in a request for sanctions.[18] On December 4, 2012, eight days after moving to dismiss their previous action, Plaintiffs filed the instant suit.

Plaintiffs alleged claims of (1) defamation; (2) intentional infliction of emotional distress; (3) conspiracy; (4) violations of RICO; and (5) unlawful deprivation of constitutional rights against Defendants Judge Furgeson, Judge Jernigan, and United States Marshals John Barron and Luke Chastain, and Does 1-20. Margetis and Baron allege that Judge Jernigan and Judge Furgeson were engaged in criminal activities that form the basis of their claims. The only criminal activity listed anywhere in their original complaint is the threadbare allegation that "Plaintiffs observed Furgeson and Jernigan extorting individuals, including Plaintiffs' family members, using fraud and deceit to unlawfully misappropriate money to funnel to Furgeson and Jernigan's friends and relatives."[19] Plaintiffs have not provided any factual content to support this allegation, such as who, what, when, or where this alleged extortion occurred. Plaintiffs then

---

[15] Dkt. 34-17 ¶ 11.
[16] Dkt. 4.
[17] Dkt. 5.
[18] Dkt. 34-19.
[19] Judge Bush *sua sponte* struck paragraphs 13, 14, and 15 from Plaintiffs' Original Complaint (Dkt. 27 at 2) under Fed. R. Civ. P. 12(f)(1) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.").

allege that Defendants retaliated against them for reporting these criminal activities to the media and law enforcement. Plaintiffs similarly fail to allege what "criminal activities" they reported and to whom. Plaintiffs allege Judge Jernigan fabricated the death threat she received in November 2011, and that Judge Jernigan had the Marshals question ("harass" and "intimidate") them, on several occasions, about the death threat in retaliation for their "whistleblowing."

Defendants filed a Motion to Dismiss[20] under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiffs failed to file a response to Defendants' Motion to Dismiss, even after being granted additional time in which to do so.[21] Instead, three days after their response was due and three days before they were due to appear in front of United States Magistrate Judge Bush and explain why venue was proper in this court, they filed an out-of-time Amended Complaint (Dkt. 24) without first seeking leave of court.

Judge Bush ordered the parties to appear and show why venue was appropriate in this district and to respond to the arguments in Defendants' Motion to Dismiss on May 9, 2013.[22] Mr. Margetis appeared at the hearing and explained that he was "under extreme mental duress"[23] because his mother had been intubated and was near death. He requested a continuance of the hearing due to his mother's health and because he had filed an amended complaint. Judge Bush

---

[20] Dkt. 16.

[21] At the sanctions hearing, Mr. Margetis claimed that "the reason we didn't respond when they filed the motion to dismiss, I was absolutely positively an emotional wreck" because of the death of his mother. According to the faded death certificate Mr. Margetis filed in this case, his mother, Mickey Margetis passed away on May 9, 2013, which unfortunately was the day he was scheduled to appear at the hearing on Defendants' motion to dismiss. However, a response was due to the motion to dismiss on May 3, 2013.  The court also notes that Plaintiffs managed to file an amended complaint (Dkt. 24) three days before the hearing on May 6, 2013.

[22] *See* Dkt. 5. Defendants waived their objection to venue at the May 9, 2013 hearing before Judge Bush. Bradley Visosky, the Assistant United States Attorney representing Defendants, indicated that he believes venue "probably is proper in any case because . . . the plaintiffs bring tort claims. And if any plaintiff resides in the district, venue is proper" under the Federal Torts Claims Act (FTCA). *See* Dkt. 32.

[23] Dkt. 32, Hr'g Tr. at 3:7, May 9, 2013.

initially denied Margetis's request for a continuance, but then, a few minutes later, at Mr. Margetis's request, excused Mr. Margetis from the hearing and indicated that if he needed to hear from Mr. Margetis further, he would call him back.[24] Ultimately, Defendants waived their objections to venue and Judge Bush stated that he would consider the merits of the motion to dismiss based on what had been filed. The hearing lasted a total of six minutes.[25] The same day of the hearing, Defendants filed a Motion to Strike the Amended Complaint (Dkt. 26).

Judge Bush issued a Memorandum Opinion and Order and Report and Recommendation (Dkt. 27) on September 13, 2013. Judge Bush recommended that Defendants' Motion to Strike the Amended Complaint (Dkt. 26) be granted because Plaintiffs failed to respond and failed to seek leave of court to file their untimely amended complaint. Judge Bush then addressed the motion to dismiss the original complaint. He *sua sponte* struck paragraphs 13, 14, 15 from the complaint under Rule 12(f), and recommended granting Defendants' Motion to Dismiss the remainder of the complaint in its entirety. Judge Bush found that

> this suit was purely motivated by spite and animosity. There were no grounds to support Plaintiffs' allegations of crimes. Further, based on the pleadings filed, there are certainly inconsistencies in what these Plaintiffs were claiming. Because the Court finds that the conduct is so egregious, the Court refers this to the U.S. District Judge with the recommendation to determine whether a show cause hearing be held and sanctions against Baron and Margetis imposed for filing an unjustified, vitreous, and frivolous lawsuit.

Plaintiffs objected to the Magistrate Judge's Report and Recommendation.[26] The objection did not address the merits of the Motion to Dismiss or the Report and Recommendation except to say that "the Federal Tort Claims Act is not relative to this situation as these people acted outside their duties as federal employees and your court does not have

---

[24] Dkt. 25-1.
[25] Dkt. 25-1.
[26] Dkt. 30.

jurisdiction."[27] Plaintiffs also stated that "[i]t must truly be noted that never in the history of the United States has such an abuse to the judiciary occurred in my 82 year old Mother's proceedings as well as in Jeffrey Baron's case . . . These activities were, and are so criminal and so corrupt that every American should be afraid to sleep at night."[28] While Plaintiffs had not specifically alleged in their complaint that their allegations arose out of Jeffrey Baron's litigation and Mickey Margetis's bankruptcy proceedings, this statement in their objection seems to make that clear.[29] This court adopted the Report and Recommendation on January 10, 2014.[30]

On October 18, 2013, Defendants filed a Motion for Sanctions (Dkt. 34). The court set a hearing on the motion for sanctions and ordered Plaintiffs to "be prepared to show cause why they should not be sanctioned for violation of Federal Rule of Civil Procedure 11(b)."[31] Plaintiffs' Motion to Strike[32] the exhibits submitted by Defendants with their motion for sanctions was denied.[33] Plaintiffs' Motion for Leave to Conduct Discovery[34] related to the

---

[27] Dkt. 30 at 3.

[28] Dkt. 30 at 3.

[29] Plaintiffs' second complaint filed in Texas state court alleging essentially the same claims also makes clear that the claims originate from actions taken by the judges in their judicial capacity. *See, e.g.,* Dkt. 34-17 ¶ 11 ("Jernigan was judge presiding over a bankruptcy proceeding over the estate of Mickey Margetis, during which proceeding Jernigan made rulings that adversely affected Mickey Margetis and John Margetis' ("Margetis") financial interest."); Dkt. 34-17 ¶ 17 ("Furgeson assumed a seemingly high degree control over the bankruptcy case under authority unclear to Petitioners.").

[30] Dkt. 51.

[31] While normally a movant would bear the burden of proof and persuasion on a motion, the court included the show cause language out of caution because of Judge Bush's recommendation that the court conduct a hearing to determine whether Plaintiffs should be sanctioned prior to the Defendants' motion. FED. R. CIV. P. 11(c)(3) explains that "the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."

[32] Dkt. 40.

[33] Dkt. 52.

[34] Dkt. 39.

motion for sanctions was denied.[35] Plaintiffs filed a Notice of Appeal of the dismissal of their claims on the merits.[36]

The hearing to determine whether sanctions should be imposed was originally scheduled on February 11, 2014.[37] Plaintiffs filed their first Emergency Motion to Continue the sanctions hearing on January 27, 2014[38] stating that they needed more time to prepare. The court granted the motion and reset the hearing for February 25, 2014.[39] On February 19, 2014, Defendants filed an Emergency Motion to Quash[40] relating to subpoenas issued by Plaintiffs for witnesses to appear at the hearing. Plaintiffs, in response, filed a second Emergency Motion to Continue[41] asking for additional time to respond to the motion to quash and prepare for the hearing. Plaintiffs were given until March 7, 2014, to file a response to the motion to quash and all pending subpoenas in the case were stayed pending a ruling on the motion to quash. The sanctions hearing was rescheduled for March 21, 2014.[42] Plaintiffs filed their response to the motion to quash on March 7, 2014, and attempted to include over 1,000 pages of documents as exhibits. The District Clerk's office refused the documents under Local Rule CV-3(b), which prohibits *pro se* litigants from filing more than twenty pages without first seeking permission from the court. Plaintiffs' Motion for Leave to file the excess pages was then filed on March 11, 2014.[43] On March 12, Plaintiffs' filed a third Emergency Motion to Continue.[44] The court granted Defendants' motion to quash, denied Plaintiffs' motion for leave to file excess pages,

---

[35] Dkt. 52.
[36] Dkt. 58.
[37] Dkt. 52.
[38] Dkt. 55.
[39] Dkt. 59.
[40] Dkt. 61.
[41] Dkt. 62.
[42] Dkt. 64.
[43] Dkt. 73.
[44] Dkt. 74.

and denied Plaintiffs' motion to continue.[45] The court's order also prohibited Plaintiffs from serving or having anyone else serve on their behalf subpoenas without first seeking leave of court.[46] Three days before the hearing, Plaintiffs filed an Emergency Motion for Clarification[47] inquiring as to whether they could serve subpoenas on non-government employee witnesses, and the court clarified that they could.[48] That same day, Plaintiffs notified the court that they had filed a judicial misconduct complaint against the undersigned.[49] On March 21, 2014, at 8:14a.m., Plaintiffs filed another Emergency Motion to Continue[50] the sanctions hearing, which was scheduled to commence at 10:00a.m. The court orally denied plaintiffs' motion to continue at the start of the hearing, and the hearing was conducted as scheduled on March 21, 2014.

During the hearing, Plaintiffs made two oral motions: a motion in limine and a motion to recuse. Both motions were denied. Mr. Margetis stated during the hearing that he wanted to make a motion in limine because a United States marshal was following him. The basis of the motion to recuse was Plaintiffs' belief that the court had become prejudiced and had violated some judicial canons by quashing Plaintiffs' subpoenas to witnesses that would offer "crucial" evidence. The court considered Plaintiffs' proffer of what evidence those witnesses would offer, and ultimately again determined the testimony would be irrelevant to a determination of sanctions. The court's decision to quash Plaintiffs' subpoenas was entirely based on the fact that Plaintiffs were unable to proffer that the witnesses could offer any relevant testimony as to why Plaintiffs should not be sanctioned.

---

[45] Dkt. 76.
[46] Despite the court's order staying the subpoenas, Plaintiffs continued to attempt to enforce and issue subpoenas. Plaintiffs have filed three "Notice[s] of Compliance" indicating that they have attempted to comply with the *Touhy* provisions despite the stay issued by the court pending a ruling on the motion to quash. *See* Dkts. 65, 69, and 77.
[47] Dkt. 78.
[48] Dkt. 81.
[49] Dkt. 80.
[50] Dkt. 82

## II.    LEGAL STANDARD

Rule 11 authorizes a court to impose sanctions if: (1) a document has been presented for an improper purpose (Rule 11(b)(1)), (2) the claims or defenses of the signer are not supported by existing law or by a good faith argument for an extension or change in existing law (Rule 11(b)(2)), or (3) the allegations and other factual contentions lack evidentiary support and are unlikely to have evidentiary support after a reasonable opportunity for investigation or discovery (Rule 11(b)(3)). A violation of any one of these provisions can merit sanctions, i.e. each provision provides an independent basis for sanctions.[51] The central purpose of Rule 11 "is to deter baseless filings in district court and . . . streamline the administration and procedure of the federal courts."[52] A court may impose sanctions on a *pro se* party.[53]

In evaluating Plaintiffs' actions, the court may consider: "(1) the time available to prepare the pleading; (2) the plausibility of the legal argument; (3) the *pro se* status of the litigant; and (4) the complexity of the legal and factual issues raised in the case."[54] "A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."[55] The sanction imposed should be the least severe sanction adequate to the purpose of Rule 11.[56] "An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction."[57]

---

[51] *F.D.I.C. v. MAXXAM, Inc.*, 523 F.3d 566, 577 (5th Cir. 2008) (citing *Whitehead v. Food Max of Miss.*, 332 F.3d 796, 802 (5th Cir.2003)).
[52] *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990).
[53] *See Saunders v. Bush*, 15 F.3d 64, 68 (5th Cir. 1994).
[54] *McCampbell v. KPMG Peat Marwick*, 982 F. Supp. 445, 448 (N.D. Tex. 1997).
[55] FED. R. CIV. P. 11(c)(4).
[56] *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 878 (5th Cir. 1988).
[57] FED. R. CIV. P. 11(c)(6).

### III.    ADMISSIBILITY OF PLAINTIFFS' EXHIBITS  AT THE SANCTIONS HEARING

On March 21, 2014, Mr. Baron appeared at 10:04a.m., and Mr. Margetis appeared at 10:20a.m. for the hearing that was scheduled to begin at 10:00a.m. Before he came to the courtroom, Mr. Margetis stopped in the Clerk's office and delivered Plaintiffs' Motion for Leave to File Excess Pages[58] along with over 1,000 pages of exhibits he intended to offer at the hearing. Mr. Margetis indicated to the court that he had fallen that morning and as a result, the exhibits that he brought to the hearing were out of order. The court allowed a recess for Mr. Margetis and Mr. Baron to organize their exhibits. Some of Plaintiffs' exhibits were offered at the hearing, but none were admitted. Ultimately, Mr. Margetis and Mr. Baron were unable organize and present a full set of the exhibits they intended to put forth at the hearing, but indicated that the Clerk's office was in possession of a complete set.

At the conclusion of the hearing, the court told the parties that the set of exhibits given to the Clerk's office would be reviewed *in camera* after the hearing to determine if they were relevant and otherwise admissible. The court has reviewed those exhibits and finds that all of the exhibits submitted are inadmissible. The following chart indicates the court's reason for declining to consider each exhibit. A few of the exhibits are duplicative.

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 1 | Teri Whitcraft email Jeff Baron and John Margetis case | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 1/30/13 Email written by Margetis to Teri Whitcraft at ABC News re: Jeff Baron and John Margetis case |
| 2 | Teri Whitcraft email Update | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 12/1/12 Email written by Margetis to Teri Whitcraft at ABC News re: update |

---

[58] Dkt. 84.

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 3 | Mickey Margetis picture with Newt Gingrich | Irrelevant (FED. R. EVID. 401) | |
| 4 | Teri Whitcraft email Please Call | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 10/16/12 Email response from Teri Whitcraft indicating that she has not reviewed material submitted by Margetis; Reply by Margetis re: Please call |
| 5 | Teri Whitcraft email Jeff Baron and John Margetis Case | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 10/11/12 Email written by Margetis to Teri Whitcraft attaching photos of his mother with Newt Gingrich |
| 6 | Teri Whitcraft email Judicial Corruption part 2/3 | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 1/18/12 Email written by Margetis to Teri Whitcraft re: Judicial Corruption – exhibits part 2/3 |
| 7 | Teri Whitcraft email Judicial Corruption part 1/3 | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 1/18/12 Email written by Margetis to Teri Whitcraft re: Judicial Corruption – exhibits part 1/3 |
| 8 | Teri Whitcraft email Re: meeting | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 1/18/12 Email written by Margetis to Jennifer Swinchatt re: meeting; attempting to schedule an appointment |
| 9 | Teri Whitcraft email Judge Bob Carroll | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 1/22/11 Email written by Margetis to Bob Warneke (includes string of other emails written by Margetis to various individuals) (14 pgs.) |
| 10 | Teri Whitcraft email recently filed motion | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 3/25/10 Email written by Margetis to Teri Whitcraft re: Recently Filed Motion |
| 11 | Teri Whitcraft email Sanctions | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 3/24/10 Email written by Margetis to Teri Whitcraft re: Sanctions |

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 12 | Teri Whitcraft email Scope of Corruption in Ellis County | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 3/23/10 Email written by Margetis to Teri Whitcraft re: Scope of Corruption in Ellis County |
| 13 | Becky Oliver email Attn: Criminal Investigation Department | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 3/22/12 Email written by John Margetis and sent to donna.ressl@foxtv.com Attn: Criminal Investigation Department (handwritten signature of Margetis on printout) |
| 14 | Fax from Judge Greg Wilhelm | Irrelevant (FED. R. EVID. 401) | 12/4/09 fax to Attorney Rea of an Order in *Neystel v. Margetis*, Cause No. 05-C-3554, Ellis County Court at Law No. 1 |
| 15 | Motion to vacate Default Judgment | Irrelevant (FED. R. EVID. 401) | 12/7/09 copy of Motion to Vacate Default Judgment in *Neystel v. Margetis*, Cause No. 05-C-3554, Ellis County Court at Law No. 1 |
| 16 | Glenda Pinkston Court Copies | Irrelevant (FED. R. EVID. 401) | 11/27/08 Copies of court documents from *In re the Guardianship of Willie Howard Hubacek*, Cause No. 07-G-1018, Ellis County Court at Law 1 |
| 17 | Order, Judge Jernigan August 30, 2011 | Irrelevant (FED. R. EVID. 401) | 8/30/11 Findings of Fact, Conclusions of Law, and Order Regarding Motion to Annul the Automatic Stay (Dkt. 148), Case No. 05-37345-SGJ-13, *In re: Mickey K. Margetis, Debtor* |
| 18 | Findings of Fact and Conclusions of Law, Jernigan, 12/14/2007 | Irrelevant (FED. R. EVID. 401) | 12/14/07 Findings of Fact and Conclusions of Law, Case No. 07-33657-SGJ-13, *In re: Mickey K. Margetis, Debtor* |
| 19 | 05-C-3554 Plaintiffs' Original Petition | Irrelevant (FED. R. EVID. 401) | 8/4/05 Plaintiffs' Original Petition, Cause No. 05-C-3554, *Neytel v. Margetis*, Ellis County Court at Law No. 1 |

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 20 | Affidavit to Judge Wilhelm | Irrelevant (FED. R. EVID. 401) | 12/7/09 Affidavit from John Margetis and Mickey Margetis re: Neystel suit |
| 21 | Plaintiffs' Original Petition | Irrelevant (FED. R. EVID. 401) | 2/28/05 Plaintiffs' Original Petition, Cause No. 69561, *Neystel v. Margetis*, 404th District Court, Ellis County |
| 22 | Order James Polk | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 3/30/10 Cover letter and proposed order to James Rea in *Neystel v. Margetis*, Cause No. 05-C-3554, Ellis County Court at Law No. 1 |
| 23 | Amended Motion for relief against void judgment | Irrelevant (FED. R. EVID. 401) | 3/18/10 Amended Motion for Relief Against Void Judgment, Cause No. 05-C-3554, *Neystel v. Margetis*, Ellis County Court at Law No. 1 |
| 24 | Writ of Execution | Irrelevant (FED. R. EVID. 401) | 3/1/10 Ellis County Sheriff's Office Notice re: Court Order in Cause No. 05-C-3554 |
| 25 | Court Transcripts Charletta Middleton | Irrelevant (FED. R. EVID. 401) | 9/30/05 Transcript of Default Judgment Hearing in Cause No. 05-C-3554, *Neystel v. Margetis*, Ellis County Court at Law No. 1 |
| 26 | Becky Oliver Email | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | Same as Exhibit 13 except that it is sent at 2:05p.m. instead of 3:05p.m. and does not contain handwritten signature of Margetis |
| 27 | Renie McClellan Complaint Attorney General of Texas | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 8/14/11 Letter from Mickey Margetis to Attorney General of Texas re: Complaint on newly hired assistant attorney Renie McClellan In the child support division and Judge Bob Carroll |
| 28 | Becky Oliver Email | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 3/22/12 email written by Margetis re: More Information |

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 29 | Federal Ethics Center | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 4/9/12 Letter from David B. Nolan, Esq., Legal Director of Federal Ethics Center to Members of Congress re: Judicial Activism in United States 5th Circuit |
| 30 | Jeff Baron Victim of Judicial Corruption | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | Document written by Margetis entitled "Jeff Baron Victim of Judicial Corruption" |
| 31 | In America, how can a Federal Judge…Letter | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | Document written by Margetis and David Nolan re: Jeff Baron litigation |
| 32 | Becky Oliver email Elderly Abuse and Judicial Corruption | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 4/17/12 Email written by Margetis to donna.ressl@foxtv.com attaching photo of his mother with Newt Gingrich |
| 33 | Becky Oliver Email, Basic cover letter detailing corruption | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 3/22/12 Email written by John Margetis re: Basic Cover Letter Detailing Corruption |
| 34 | Johnny Sutton Email, Requested Information | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 4/18/12 Email written by Margetis to jsutton@ashcroftlawfirm.com re: Requested Information |
| 35 | Judge Jernigan Complaint of Misconduct 06/27/11 | Irrelevant (FED. R. EVID. 401) | 6/27/11 Complaint of Judicial Misconduct or Disability against Judge Jernigan by Mickey and John Margetis |
| 36 | Judge Jernigan Complaint of Misconduct 05/27/11 | Irrelevant (FED. R. EVID. 401) | 5/27/11 Complaint of Judicial Misconduct or Disability against Judge Jernigan by Mickey and John Margetis |
| 37 | Judge Jernigan Complaint of Misconduct 03/02/11 | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 3/2/11 Complaint against Judge Jernigan by John and Mickey Margetis |

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 38 | Supplemental Complaint Judge Jernigan | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | Document signed by Mickey Margetis and John Margetis re: Mickey Margetis bankruptcy case |
| 39 | Hillary Clinton Letter, March 4, 2011 | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 3/4/11 Letter from Mickey Margetis to Hillary Clinton |
| 40 | Letter to Clifford White, Ramona Elliot, Lanny Breuer 12/06/11 | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 12/6/11 Letter to Clifford White, Ramona Elliott, and Lanny Breuer re: Judicial Corruption; 12/5/11 Letter from Sharon Rondeau to Criminal Enforcement Unit, Executive Office for U.S. Trustee re: Judicial Corruption |
| 41 | Jeff Baron, Victim of Judicial Corruption | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | Document written by Margetis re: Jeff Baron litigation |
| 42 | Letter to Stacia Hylton March 16, 2012 | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 3/16/12 Letter from Margetis to Stacia Hylton re: Official report of crimes and misconduct against victims and witnesses in the Northern District of Texas. |
| 43 | Letter of Introduction to Members of Congress March 01, 2011 | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 3/1/11 Letter from Margetis to Members of Congress re: Jeff Baron litigation |

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 44 | Letter to Ramona Elliott July 19, 2011 | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 7/19/11 Letter from Margetis to Ramona Elliott re: Mickey Margetis bankruptcy; 12/6/11 Letter to Clifford White, Ramona Elliott, Lanny Braaur re: Judicial Corruption; 7/19/11 Letter from John Margetis and Mickey Margetis re: Mickey Margetis bankruptcy (2 copies – 1 handwritten labeled "Ramona Elliott" and 1 labeled "FBI"; 1/29/12 Letter from John Margetis to Don Freese re: Mickey Margetis bankruptcy; 6/8/12 Letter from Margetis to Ron Holland re: Mickey Margetis bankruptcy and Jeff Baron litigation |
| 45 | Dee Dee Arnold Complaint Furgeson 11/06/2004 | Irrelevant (FED. R. EVID. 401) | 11/6/04 Complaint of Judicial Misconduct from Andrea D. Arnold re: Judge Furgeson, Judge Garza, Judge Jolly and Judge Smith re: *Hatteberg v. Red Adair Co., Inc. Employees' Profit Sharing Plan and its Related Trust*, No. 00-51109 |
| 46 | Dee Dee Arnold Complaint Furgeson 01/08/2005 | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 1/8/05 Petition for Review of Chief Judge's Disposition of Complaint of Judicial Misconduct from Andrea D. Arnold |
| 47 | Narcosphere Judge Furgeson | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 7/12/09 posting on narcosphere.com by Bill Conroy entitled "Cele Castillo ordered to report to federal prison" |
| 48 | Dee Dee Arnold Complaint Furgeson 03/11/05 | Irrelevant (FED. R. EVID. 401) | 3/8/05 Order from Fifth Circuit Judicial Council dismissing the complaint of Andrea D. Arnold against Judges Furgeson, Jolly, Smith, and Garza |

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 49 | Letter to Chief of Staff, Emanuel | Hearsay (Fed. R. Evid. 801(c)), Irrelevant (Fed. R. Evid. 401) | Letter from Mickey Margetis to Chief of Staff Emanuel re: Judge Sibley and Alicia Escabar, Nancy J. Petterson and Rupert Keeping |
| 50 | Letter to Charles Fulbruge 04/25/06 | Hearsay (Fed. R. Evid. 801(c)), Irrelevant (Fed. R. Evid. 401) | 4/25/06 Letter from Henry-Dale; Goltz to Charles R. Fulbruge re: judicial complaint regarding Judge Furgeson in *United States v. Henry D. Gotlz* |
| 51 | Complaint Judge Jernigan March 02, 2011 | Hearsay (Fed. R. Evid. 801(c)), Irrelevant (Fed. R. Evid. 401) | 3/2/11 Letter from Mickey Margetis and John Margetis re: judicial complaint regarding Judge Jernigan in Mickey Margetis bankruptcy |
| 52 | Case MDL No. 2119 Doc. 198 | Irrelevant (Fed. R. Evid. 401) | 2/2/12 Amicus Curiae Information Regarding Judge W. Royal Furgeson, Jr., Dkt. 198, *In re: Mortgage Electronic Registration Systems (MERS) Litigation*, Case MDL 2119 |
| 53 | The attached 8 Mandates of the Fifth Circuit | Irrelevant (Fed. R. Evid. 401) | Cover letter re: mandates from Fifth Circuit in Jeff Baron litigation |
| 54 | Dr. Richard Cordero, Esq. Letter | Hearsay (Fed. R. Evid. 801(c)), Irrelevant (Fed. R. Evid. 401) | Document from Dr. Richard Cordero, Esq. entitled "The Official Statistics of the Administrative Office of the U.S. Courts Show the Systematic Dismissal by Federal Judges Including the Justices of the Supreme Court, of Judicial Misconduct Complaints Against them |
| 55 | Letter to Don Freese January 29, 2012 | Hearsay (Fed. R. Evid. 801(c)), Irrelevant (Fed. R. Evid. 401) | 1/29/12 Letter from John Margetis to Don Freese |

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 56 | Letter to Gary Koenig and Edward Quintana 12/19/11 | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 12/19/11 Letter from John Margetis to Gary Koenig and Edward Quintana |
| 57 | Federal Judge put Internet Pioneer in Civil Lockdown | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 12/14/12 posting from washingtonexaminer.com by Barbara F. Hollingsworth re: Jeff Baron |
| 58 | Systemic Failure of Federal Court System Table of Exhibits | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | Document by John Margetis re: Judge Jernigan and Judge Furgeson |
| 59 | Email from Barry Golden to Jeff Baron | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 12/2/10 Email from Barry Golden to Jeff Baron, Peter Vogel, Peter Loh re: Jeff Baron litigation |
| 60 | Letter to Judge Furgeson from Gary Schepps 04/01/11 | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 4/1/11 Letter from Gary Schepps to Judge Furgeson re: Jeff Baron Receivership; Dkt. 423 in Case No. 3:09-cv-988-F, N.D. Tex. |
| 61 | Letter to Judge Furgeson from Gary Schepps 05/06/11 | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 5/6/11 Letter from Gary Schepps to Judge Furgeson re: Jeff Baron, Dkt. 524 in Case No. 3:09-cv-00988-F |
| 62 | Letter to Judge Furgeson from Gary Schepps 05/03/11 | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 5/3/11 Letter from Gary Schepps to Judge Furgeson; Dkt. 508 in Case No. 3:09-cv-00988-F |
| 63 | Motion to Reconsider Stay of District Court Order | Irrelevant (FED. R. EVID. 401) | 3/2/11 Motion to Reconsider Stay of District Court Order Appointing Receiver Over the Person and Property of Jeff Baron; *Netsphere, Inc. v. Baron*, Case 10-11202, 5th Circuit |

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 64 | Special Master Appointed to Conduct Global Mediation | Irrelevant (FED. R. EVID. 401) | Documents from Case No. 10-11202; Jeff Baron litigation, 5th Cir. |
| 65 | Netsphere Brief of Appellant | Irrelevant (FED. R. EVID. 401) | 3/28/11 Brief of Appellant; *Netsphere, Inc. v. Baron*, Case 10-11202, 5th Cir. |
| 66 | Reply Brief for Appellant Jeffrey Baron | Irrelevant (FED. R. EVID. 401) | 7/15/11 Reply Brief of Appellants; *Netsphere, Inc. v. Baron*, Case 10-11202, 5th Cir. |
| 67 | Receiver's Notice of Employment of Gary Lyon | Irrelevant (FED. R. EVID. 401) | 2/14/11 Receiver's Notice of Employment of Gary Lyon as Consultant to Receiver (Dkt. 312), *Netsphere, Inc. v. Baron*, Case 3:09-cv-00988-F, N.D. Tex. |
| 68 | Brief of Appellants | Irrelevant (FED. R. EVID. 401) | 3/28/11 Brief of Appellants, *Netsphere, Inc. v. Baron*, Case No. 11-10113, 5th Circuit; 7/15/11 Reply Brief for the Appellants Novo Point, LLC and Quantec, LLC, *Netsphere, Inc. v. Baron*, Case 10-11202, 5th Cir. |
| 69 | Motion for Stay of Receivership | Irrelevant (FED. R. EVID. 401) | 6/22/11 Motion for Stay of Receivership and Civil Lockdown Order Based Upon Recent Developments, *Netsphere, Inc. v. Baron*, Case 10-11202, 5th Cir. |
| 70 | Preliminary Response to Tenth Motion for Fees from Vogel's Firm | Irrelevant (FED. R. EVID. 401) | 10/21/11 Preliminary Response to Tenth Motion for Fees for Vogel's Law Firm, *Netsphere, Inc. v. Baron*, Case 10-11202, 5th Cir. |
| 71 | Order striking affidavit from record and placing under seal | Irrelevant (FED. R. EVID. 401) | 5/6/11 Order Striking Affidavit from Record and Placing Under Seal (Dkt. 546), *Netsphere, Inc. v. Baron*, Case No. 3:09-cv-0988-F, N.D. Tex. |

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 72 | Stipulated Dismissal With Prejudice | Irrelevant (FED. R. EVID. 401) | Exhibit I – Stipulated Dismissal with Prejudice from *Netsphere, Inc. v. Baron*, Case 3:09-cv-0988-F, N.D. Tex. (filed in Case 11-10113, 5th Cir., 3/21/11) |
| 73 | Brief for Appellants Novo Point, LLC | Irrelevant (FED. R. EVID. 401) | 10/6/11 Brief for Appellants Novo Point, L.L.C., Quantec, L.L.C., and Jeffrey Baron, Case No. 11-10501, 5th Cir. |
| 74 | Emergency Motion of Trustee for Appointment of a Receiver | Irrelevant (FED. R. EVID. 401) | 11/24/10 Emergency Motion of Trustee for Appointment of a Receiver Over Jeffrey Baron (Dkt. 123), *Netsphere, Inc. v. Baron*, Case No. 3:09-cv-0988-F, N.D. Tex. |
| 75 | Order Directing Establishment of Security Deposit | Irrelevant (FED. R. EVID. 401) | 9/18/10 Order Directing Establishment of Security Deposit (Dkt. 446), *In re: Ondova Limited Company, Debtor*, Case No. 09-347-84-SGJ-11, N.D. Tex. |
| 76 | Order Granting the Receiver's Third Motion to Clarify Order | Irrelevant (FED. R. EVID. 401) | 2/3/11 Order Granting the Receiver's Third Motion to Clarify the Receiver Order (Dkt. 272), *Netsphere, Inc. v. Baron*, Civil Action No. 3:09-cv-0988-F, N.D. Tex. (also labeled Exhibit AG, Case 11-10113, 5th Cir.) |
| 77 | Order appointing Receiver | Irrelevant (FED. R. EVID. 401) | 11/24/10 Order Appointing Receiver (Dkt. 124), *Netsphere, Inc. v. Baron*, Civil Action No. 3:09-cv-0988-F, N.D. Tex. |
| 78 | Motion to Stay Ex-Parte Order | Irrelevant (FED. R. EVID. 401) | 2/20/11 Appendix A to Motion to Stay Ex-Parte Order Appointing Receiver over Jeffrey Baron, *Netsphere, Inc. v. Baron*, Case No. 10-11202, 5th Cir. |

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 79 | Response to Vogel Sealed Motion | Irrelevant (FED. R. EVID. 401) | 9/16/11 Response to Vogel Sealed Motion to Have the Propriety of His Actions Confirmed and Motion for Evidentiary Hearing, *Netsphere, Inc. v. Baron*, Case No. 10-11202, 5th Cir. |
| 80 | Collin County Observer by Bill Baumbach | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 11/19/08 posting from www.pegasusnews.com by Bill Baumbach entitled "Who gains from Collin County's suit against its auditor?" |
| 81 | Order Denying Motion to Vacate Order | Irrelevant (FED. R. EVID. 401) | 2/3/11 Order Denying Emergency Motion to Vacate Order Appointing Receiver and in the Alternative, Motion for Stay Pending Appeal (Dkt. 268), *Netsphere, Inc. v. Baron*, Case No. 3:09-cv-988-F, N.D. Tex. |
| 82 | Report and recommendation to District Court | Irrelevant (FED. R. EVID. 401) | 10/12/10 Report and Recommendation to District Court (Judge Royal Furgeson): That Peter Vogel, Special Master, Be Authorized and Directed to Mediate Attorneys Fees Issues, *In re: Ondovoa Limited Company, Debtor*, Case No. 09-37484-SGJ-11, filed as Dkt. 123-1 in Case 3:09-cv-00988-F, N.D. Tex. |
| 83 | Order Granting Motion to Seal | Irrelevant (FED. R. EVID. 401) | 5/18/11 Order Granting Motion to Seal (Dkt. 577), *Netsphere, Inc. v. Baron*, Civil Action No. 3:09-cv-0988-F, N.D. Tex. |

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 84 | Sue Sponte Order | Irrelevant (FED. R. EVID. 401) | 7/23/10 Sua Sponte Order Requiring Sealing of Affidavit to be Filed by Jeff Baron by July 27, 2010, but Allowing Access to Certain Parties-in-Interest (Dkt. 389), *In re Ondova Limited Company, Debtor,* Case 09-34784-sgj11, Bankr. N.D. Tex. |
| 85 | Brief for Appellant Jeffrey Baron in Reply to Sherman Briefing | Irrelevant (FED. R. EVID. 401) | 11/21/11 Brief for Appellant Jeffrey Baron in Reply to Sherman Briefing on Appeals, Nos. 11-10289, 11-10390, 11-10501, *Netsphere, Inc. v. Baron*, No. 10-11202, 5th Cir. |
| 86 | Brief for Appellants Novo Point LLC | Irrelevant (FED. R. EVID. 401) | 11/21/11 Brief for Appellants Novo Point, LLC and Quantec, LLC in Reply to Sherman Briefing on Appeals Nos. 11-10390, 11-10501, *Netsphere, Inc. v. Baron*, No. 10-11202, 5th Cir. |
| 87 | Supplemental Complaint Judge Jernigan | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | Letter from John Margetis and Mickey Margetis re: Supplemental Complaint Judge Jernigan, Docket number 05-11-90144 re: Mickey Margetis bankruptcy |
| 88 | Complaint Judge Jernigan March 02, 2011 | Irrelevant (FED. R. EVID. 401) | 3/2/11 Letter from John Margetis and Mickey Margetis re: complaint pertaining to Judge Jernigan in Mickey Margetis bankruptcy |

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 89 | Letter to Clifford White, Ramona Elliott, and Lanny Breuer | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 12/6/11 Letter to Clifford White, Ramona Elliott, and Lanny Breuer re: Judicial Corruption; 12/5/11 Letter from Sharon Rondeau to Criminal Enforcement Unit Executive Office for U.S. Trustees re: Judicial Corruption in Jeff Baron litigation; Document entitled "Stop Legalization of Human Bondage in America – Free Man in Receivership as Property" with link to sign petition regarding Jeff Baron litigation |
| 90 | Letter to Stacia Hylton, U.S. Marshals Service | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 3/16/12 Letter from John Margetis to Stacia Hylton re: Official report of crimes and misconduct being conducted against victims and witnesses in the Northern District of Texas |
| 91 | Letter to Gary Koenig and Edward Quintana | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 12/19/11 Letter from John Margetis to Gary Koenig and Edward Quintana re: Judge Jernigan and Judge Furgeson in Mickey Margetis bankruptcy and Jeff Baron litigation |
| 92 | Inspector General Letter January 20, 2012 | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 1/20/12 Letter from John Margetis to Civil Rights and Civil Liberties Complaints, Office of the Inspector General, U.S. Department of Justice re: Judge Jernigan and Judge Furgeson in Mickey Margetis bankruptcy and Jeff Baron litigation |

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 93 | Letter of Introduction to Members of Congress | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 1/12/12 Letter from John Margetis entitled "Letter of Introduction to Members of Congress with Emergency Request for Assistance from House and Senate Judiciary Committees, Members of Texas Delegation, and Department of Justice" re: Judge Jernigan and Judge Furgeson in Mickey Margetis bankruptcy and Jeff Baron litigation |
| 94 | Letter from Don Freese | Irrelevant (FED. R. EVID. 401) | 3/27/12 Letter from Donald W. Freese, Assistant Special Agent in Charge, re: Margetis Judicial Corruption Complaint returning documents submitted to FBI by John Margetis |
| 95 | Dr. Richard Cordero, Esq. Official Statistics of the Admin. Office | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | Document from Dr. Richard Cordero, Esq. entitled "The Official Statistics of the Administrative Office of the U.S. Courts Show the Systematic Dismissal by Federal Judges Including the Justices of the Supreme Court, of Judicial Misconduct Complaints Against them (same as Exhibit 54) |
| 96 | Letter to Eric Schwethelm, Steve Cochell | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 1/17/12 Letter from Steve Cochell to Eric Schwethelm re: Jeff Baron litigation |
| 97 | Complaint Judge Jernigan 05/27/11 | Irrelevant (FED. R. EVID. 401) | 5/27/11 Complaint of Judicial Misconduct by John Margetis and Mickey Margetis re: Judge Jernigan in Mickey Margetis bankruptcy |

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 98 | Complaint Judge Jernigan | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | Unlabeled document re: Mickey Margetis bankruptcy and Judge Jernigan |
| 99 | Settlement and Release Agreement | Irrelevant (FED. R. EVID. 401) | Unsigned Settlement and Release Agreement between John Litzler, James G. Rea, Marc W. Taubenfeld, McGuire, Craddock, & Strother, P.C., John A. Margetis, and Mickey K. Margetis |
| 100 | Amended Adversary Complaint | Irrelevant (FED. R. EVID. 401) | 8/4/11 Amended Complaint of Mickey K. Margetis [Debtor], and John A. Margetis [Debtor's Son], *In re: Mickey K. Margetis, Debtor, Mickey K. Margetis and John A. Margetis v. James G. Rea*, Case. 05-37345-SGJ-13, Adversary No. 11-03376-bjh, Bankr. N.D. Tex. |
| 101 | Letter to the Editor, Binkley | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 3/31/10 posting entitled "Letter to the Editor | 'Our Concern is the Integrity of [Bob] Carroll.'" Signed by Bruce & Camella Binkley |
| 102 | Dee Dee Arnold Complaint Furgeson 01/08/05 | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | 1/8/05 Letter from Andrea D. Arnold to Fifth Circuit re: Petition for Review of Chief Judge's Disposition of Complaint of Judicial Misconduct |
| 103 | Glenda Pinkston Court Copies | Irrelevant (FED. R. EVID. 401) | Documents from *In the Guardianship of Willie Howard Hubacek, an incapacitated person*, Cause No. 07-G-1018, Ellis County Court at Law No. 1 |
| 104 | Plaintiff's Motion to Recuse | Irrelevant (FED. R. EVID. 401) | 5/22/00 Plaintiff's Motion to Recuse, *Hatteberg v. Adair Enters., Inc.*, C.A. No. MO-97-CA-209, W.D. Tex. |

| Exhibit Number | Plaintiffs' Title | Reason It Is Inadmissible | Description |
|---|---|---|---|
| 105 | Order denying Plaintiff's Motion for Summary Judgment | Irrelevant (FED. R. EVID. 401) | 8/8/00 Order Denying Plaintiff's Motion for Summary Judgment and Granting Defendants' Motion for Summary Judgment, *Hatteberg v. Adair Enters., Inc.*, MO-97-CA-209, W.D. Tex. |
| 106 | Andrea Hatteberg Letter to Judge Furgeson | Irrelevant (FED. R. EVID. 401) | 5/27/99 Letter from David W. Tucker to Judge Furgeson re: *Hatteberg v. Red Adair Co., Inc.*, Replies to Responses to Report of Special Master |
| 107 | Plaintiff's Original Complaint, Andrea Hatteberg | Irrelevant (FED. R. EVID. 401) | 12/10/97 Plaintiff's Original Complaint and Request for Preliminary Injunction, *Hatteberg v. Red Adair Co., Inc.*, MO97CA209, W.D. Tex. |
| 108 | Orders issued by Royal Furgeson Reversed by Fifth Circuit | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | Various orders from Fifth Circuit re: Jeff Baron litigation with spreadsheet |
| 109 | Requests to Comply with Touhy Regulations | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | Multiple copies of letters from John Margetis and Alan Baron re: individuals served with subpoenas in 4:12-cv-753, *Margetis v. Furgeson*, E.D.Tex. |
| 110 | Ron Holland Letter from Alan Baron | Hearsay (FED. R. EVID. 801(c)), Irrelevant (FED. R. EVID. 401) | Letter from Alan Baron to Ron Holland re: Jeff Baron litigation |

Accordingly, Plaintiffs' Motion for Leave to File Excess Pages (Dkt. 84) is **DENIED**. Plaintiffs

filed a Motion for Clarification (Dkt. 88) on March 27, 2014, six days after the hearing, asking

whether the court "will take note of the numerous exhibits" prior to making a ruling on the

Motion for Sanctions. Plaintiffs' Motion for Clarification (Dkt. 88) is **GRANTED**. As explained

above, the court has received and reviewed each exhibit and finds that the exhibits are

inadmissible and do not support Plaintiffs' contention that Rule 11 sanctions are not warranted in this matter.

Plaintiffs' Emergency Motion for Docketing (Dkt. 92) is **DENIED**. Plaintiffs ask the court to electronically docket the exhibits submitted in the CM/ECF system. Many of the documents provided by Plaintiffs contain offensive and completely unsubstantiated accusations against Judge Furgeson and Judge Jernigan, and for that reason the court has not published them in the electronic record of this case, but the court will make them available to the United States Court of Appeals for the Fifth Circuit. Each and every page provided by Plaintiffs is inadmissible because it is irrelevant or hearsay or both.

## IV. ANALYSIS

### A. Plaintiffs' allegations against the United States Magistrate Judge

First, the court addresses Mr. Margetis's allegations against the United States Magistrate Judge in this matter. Mr. Margetis accuses the United States Magistrate Judge in this case of being inhumane by refusing to allow Mr. Margetis to leave the hearing on May 9, 2013. This court has reviewed the transcript and the minutes of that hearing. The hearing lasted a total of six minutes. When the case was initially called, Mr. Margetis asked for a continuance, and Judge Bush denied it. However, within three minutes, Judge Bush told Mr. Margetis he could leave and that the hearing would go on with respect to Mr. Baron only. Mr. Margetis insisted that he had to stay and defend his rights. Judge Bush again told Mr. Margetis that he would grant a continuance of the hearing as to his claims, and that if the court needed anything further, Judge Bush would call another hearing. Three minutes after that, the hearing concluded. Judge Bush did not force Mr. Margetis to remain in the courtroom while his mother was dying. Mr. Margetis's accusations against Judge Bush are entirely unjustified and frivolous.

**B. Plaintiffs' Original Complaint Fails to State a Plausible Claim for Relief**

Plaintiffs filed their Original Complaint (Dkt. 1) alleging claims for (1) defamation; (2) intentional infliction of emotional distress; (3) conspiracy; (4) violations of the Racketeer Influenced and Corrupt Organizations Act; and (4) unlawful deprivation of constitutional rights. The Magistrate Judge recommended, and this court ordered, that the complaint be dismissed under Rule 12(b)(1). Indeed, the complaint also fails to state a plausible claim for relief under Rule 12(b)(6).

"A claim for relief is plausible on its face when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[59] Factual allegations must be enough to raise a right to relief above the speculative level."[60] In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[61] Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[62] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[63] First, the court identifies conclusory allegations and proceeds to disregard them because they are "not entitled to the assumption of truth."[64] Second, the court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to

---

[59] FED. R. CIV. P. 12(b)(6).
[60] *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citing *Twombly*, 550 U.S. at 555).
[61] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).
[62] *Id.*
[63] *Id.*
[64] *Id.* at 679.

relief."[65] This evaluation is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[66]

Plaintiffs have not put forth any factual content to support their allegations. Plaintiffs merely offer that their contentions are "on information and belief" but put forth no facts to support their belief. The Original Complaint only contains conclusory allegations such as that Defendants were "engaging in unlawful activities,"[67] "extorting inviduals,"[68] "bullying, harassing and intimidating Plaintiffs,"[69] that Defendants "reached an agreement to unlawfully intimidate, harass and defame Plaintiffs in retaliation,"[70] and that

> Plaintiff's [sic] believe that the alleged death threat to Jernigan and/or Furgeson is fabricated, staged by the Operative Defendants Jernigan and/or Furgeson in retaliation for Plaintiffs' and their family's cooperation with media, and for providing information and testimony to law enforcement about Jernigan and Furgeson's criminal activities, and to deter Plaintiffs and their families from speaking about the criminal activity.[71]

Plaintiffs contend that they have been defamed by "Operative Defendants' statements regarding Plaintiff's [sic] being suspects of a crime,"[72] but offer no supporting details. In support of their claim for intentional infliction of emotional distress, Plaintiffs simply allege that "Operative Defendants' harassing and intimidating numerous persons without any legitimate purpose constitutes intentional and outrageous conduct" that caused Plaintiffs to suffer severe emotional distress.[73] In support of their conspiracy claim, Plaintiffs merely state "Defendants had a meeting

---

[65] *Id.* at 681.
[66] *Id.* at 679.
[67] Dkt. 1 ¶ 12.
[68] Dkt. 1 ¶ 13.
[69] Dkt. 1 ¶ 16.
[70] Dkt. 1 ¶ 19.
[71] Dkt. 1 ¶ 32.
[72] Dkt. 1 ¶ 34.
[73] Dkt. 32 ¶ 36.

of the minds to defame Plaintiffs and to cause Plaintiffs to suffer emotional distress"[74] and "to intimidate witnesses, informants and victims; and to hinder and delay witnesses and informants reporting criminal activities."[75] Plaintiffs' RICO allegation includes the statement that

> [a]ll Defendants conspired to, and did operate as a RICO enterprise to injure Plaintiffs and other victims by means of Intimidating victims and witnesses and tampering with victims and witnesses, inhibiting and delaying victims and witnesses from providing information and testimony about crimes. Every Defendant participated in the organization as a RICO enterprise.[76]

Finally, Plaintiffs conclusorily assert that "[a]ll of Defendants' predicate acts have a similar purpose: To inhibit and delay individuals from providing information and testimony to crimes committed by Jernigan, Furgeson and others. Defendants have accomplished this through intimidating individuals associated with Plaintiffs and their families, interfering with their businesses."[77] Plaintiffs' conclusory allegations are not entitled to a presumption of truth.

The failure of Plaintiffs to state a plausible claim for relief in their Original Complaint under Rule 12(b)(6) is not by itself sufficient to warrant the imposition of sanctions.[78] But Plaintiffs' failure to show that (1) the baseless and derogatory allegations they have asserted have any evidentiary support, and (2) that they conducted an inquiry reasonable under the circumstances to determine whether they should file this suit, does support the imposition of sanctions. Further, the court finds that based on the objectively ascertainable circumstances of this case, it is empirically clear that Plaintiffs have brought this suit for an improper purpose.

---

[74] Dkt. 1 ¶ 38.
[75] Dkt. 1 ¶ 39.
[76] Dkt. 1 ¶ 43.
[77] Dkt. 1 ¶ 45.
[78] *Tahfs v. Proctor*, 316 F.3d 584, 595 (6th Cir. 2003) ("A complaint does not merit sanctions under Rule 11 simply because it merits dismissal pursuant to Rule 12(b)(6)."); *Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P.*, 171 F.3d 52, 58 (1st Cir. 1999) ("The mere fact that a claim ultimately proves unavailing, without more, cannot support the imposition of Rule 11 sanctions.").

After being informed that their claims lacked merit, they continued to pursue their baseless claims and attempted to skirt unfavorable law by oblique pleading and testimony.

> ### i. *Judge Jernigan and Judge Furgeson are absolutely immune from this suit.*

Plaintiffs attempt to avoid the problem that judicial immunity poses to their claims by arguing that their claims are not based on orders made by Judge Jernigan and Judge Furgeson in their judicial capacities. In their brief submitted the day of the hearing, Plaintiffs assert that "functions performed by Defendants, federal and state judges, in Plaintiff's Complaints was non judicial and non-adjudicatory." [79] Plaintiffs do not specify the functions to which they are referring. In support of this assertion, Plaintiffs point to *Malina v. Gonzales*, 994 F.2d 1121 (5th Cir. 1993), arguing that it is analogous to this case. It is not. In *Malina*, a state court judge stopped a motorist on the highway, sent an officer to summons the motorist to court, and then held him in contempt when he questioned the judge's authority to take such actions. Plaintiffs in this case have not pointed to any encounter with Judge Furgeson or Judge Jernigan that took place outside the context of the judges' official capacities. Plaintiffs also point to *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), *Goldstein v. City of Long Beach*, 481 F.3d 1170 (9th Cir 2007), *Botello v. Gammick*, 413 F.3d 971 (9th Cir. 2005), and *KRL v. Moore*, 384 F.3d 1105 (9th Cir. 2004) to support their argument. In the cited cases, the courts were evaluating when prosecutors are shielded by qualified immunity in performing their duties. Plaintiffs also cite to *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993), in which the Court determined that court reporters are not entitled to immunity as part of the judicial function because their job requires no discretionary judgment. Finally, Plaintiffs point to *Clinton v. Jones*, 520 U.S. 681 (1997), which held that the doctrine of separation of powers does not bar every exercise of the courts' jurisdiction over the President of the United States. None of the cases cited support

---

[79] Dkt. 83.

Plaintiffs' allegations in this case, and none of them provide any basis for a determination that Judge Jernigan and Judge Furgeson somehow acted outside of their official capacities and are subject to civil liability as a result.

"Judges are absolutely immune against an action for damages for acts performed in their judicial capacities, even when such acts are alleged to have been done maliciously or corruptly."[80] In what appears to be an attempt to circumvent the clearly applicable law, throughout the hearing Plaintiffs insisted that their complaint is not about rulings made by Judge Jernigan and Judge Furgeson. However, Plaintiffs never clearly articulated what actions taken outside of their official capacities Plaintiffs believe to be (1) criminal and (2) subject to a civil suit by Plaintiffs. When pressed on the matter, inevitably, Plaintiffs would return to a discussion of decisions made by Judge Jernigan in the Mickey Margetis bankruptcy case and the Jeffrey Baron litigation and by Judge Furgeson in the Jeffrey Baron litigation. For instance, during his direct testimony at the court's hearing on sanctions, Mr. Margetis stated that Judge Jernigan's final order concluded that she lacked subject-matter jurisdiction but that Judge Jernigan stated that she believed that a lease agreement at issue in Mickey Margetis's bankruptcy had been forged despite not having subject-matter jurisdiction. Mr. Margetis asserted that Judge Jernigan's lack of subject-matter jurisdiction means that all actions taken by her in relation to the dispute were "*ultra vires*." Mr. Margetis also asserted that the Defendants' "illegal activities" were related to orders that had been overturned by the Fifth Circuit. Mr. Margetis's testimony makes clear that his objections relate to Judge Jernigan's and Judge Furgeson's judicial actions. The ultimate determination that a court lacks subject-matter jurisdiction over a claim or the fact that a

---

[80] *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989) (internal quotation marks and punctuation omitted).

court's decision is overturned by an appellate court does not mean that the court's actions in that case are criminal or fall outside their official role subjecting the judge to civil liability.

Plaintiffs maintained throughout the hearing that the exhibits they had gathered would prove their allegations, but nothing in the documents reviewed by this court shows anything other than that Plaintiffs have spent a lot of time disparaging Judge Jernigan and Judge Furgeson over the last three years to various individuals and entities. Indeed, many of the exhibits submitted are pleadings, transcripts, or judicial misconduct complaints related to either Mickey Margetis's bankruptcy or Jeffrey Baron's litigation, which only underscores the fact that this suit is based on Plaintiffs' disagreement with Judge Jernigan and Judge Furgeson's actions taken in their official capacities in those cases.

### ii. *Plaintiffs lack standing to assert claims based on these allegations.*

Moreover, the judicial decisions about which Plaintiffs are aggrieved are not even directed to these Plaintiffs, and Plaintiff Margetis has previously been informed that he lacks standing to assert a claim against Judge Jernigan based on her rulings in his mother's bankruptcy case.[81] None of Plaintiffs' allegations, even if taken as true, and even if the actions formed the basis of a plausible civil claim, would support Mr. Margetis's and Mr. Baron's allegations in their complaint. None of those things happened to either Mr. Margetis or Mr. Baron, and therefore Plaintiffs do not have standing to assert any claim based on those actions. Plaintiffs, particularly Mr. Margetis, appear to be laboring under the impression that if they perceive that a wrong has occurred, it is their duty and right to file a lawsuit complaining about it.

---

[81] Dkt. 34-8 at 5 ("John Margetis lacks standing to complain of the Bankruptcy Judges' conduct. He was not a creditor in either of his mother's prior bankruptcy cases. While he is upset about what he perceives as mistreatment that his mother allegedly received by the Bankruptcy Judge, he is not a person aggrieved by that conduct such that he has legal standing to sue.").

"[T]he elements of constitutional standing are: (1) that the plaintiff have suffered an 'injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent'; (2) that there is a 'causal connection between the injury and the conduct complained of'; and (3) that the injury is likely to be redressed by a favorable decision."[82] A lawsuit is not the proper way to engage in what Plaintiffs perceive as "whistleblowing." In fact, "[t]he right of access to the courts is neither absolute nor unconditional and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious."[83] The fact that Plaintiffs are acting *pro se* does not give them an "impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."[84]

### C. Plaintiffs did not perform an inquiry reasonable under the circumstances.

### i. An inquiry reasonable under the circumstances must relate to the signed pleading filed with the court.

Federal Rule of Civil Procedure 11(b)(3) explains that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." An inquiry reasonable under the circumstances requires an inquiry of the facts and law specific

---

[82] *Fla. Dep't of Ins. V. Chase Bank of Tex. Nat'l Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)).

[83] *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 193 (5th Cir. 2008) (quoting *Sieverding v. Colo. Bar Ass'n*, 469 F.3d 1340, 1343 (10th Cir. 2006).

[84] *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986)

to the claim contained in the pleading at the time it is signed and filed.[85] To determine whether Plaintiffs made a "reasonable inquiry" into the law governing this case, "the court should consider: (1) the time available to prepare the pleading; (2) the plausibility of the legal argument; (3) the *pro se* status of the litigant; and (4) the complexity of the legal and factual issues raised in the case."[86] "*Pro se* litigants are entitled to some additional latitude in pleading."[87] But "*pro se* status is not a license to litter the dockets of the federal courts with patently baseless suits."[88] "Sanctions on *pro se* litigants are appropriate if they were warned that their claims are frivolous and they were aware of 'ample legal authority holding squarely against them.'"[89]

At the hearing, Mr. Margetis argued that if the hearing on the motion to dismiss would have been reset, that he and Mr. Baron could have found evidence to support their claims. A party that files a pleading must have performed an inquiry reasonable under the circumstances *before* filing it with the court, not after. The discovery process is not intended to be used by Plaintiffs as an opportunity to uncover a claim.[90] "Tolerance of factual contentions in initial pleadings by plaintiffs or defendants when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into

---

[85] *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 873-74 (5th Cir. 1988) ("It is well established that Rule 11 imposes the following affirmative duties with which an attorney or litigant certifies he has complied by signing a pleading, motion, or other document. (1) that the attorney has conducted a reasonable inquiry into the facts which support the document . . .").
[86] *McCampbell v. KPMG Peat Marwick*, 982 F. Supp. 445, 448 (N.D. Tex. 1997).
[87] *Taylor v. C.I.R.*, 350 F. App'x 913, 915 (5th Cir. 2009) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).
[88] *Id.*
[89] *Id.*
[90] *See Russell v. Choicepoint Servs., Inc.*, 302 F. Supp. 2d 654, 670-671 ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable without discovery, not to find out if it has any basis for a claim.").

the facts that is reasonable under the circumstances; it is not license to join parties, make claims, or present defenses without any factual basis or justification."[91]

### ii. *Plaintiffs' subjective beliefs are insufficient to support filing the complaint.*

Plaintiffs' subjective belief in the truthfulness of their allegations is insufficient to support the filing of this suit and protect them from sanctions. Just as a court should not necessarily sanction a party for that party's own subjective bad faith when it has filed a document that has a reasonable basis in law or fact, the Plaintiffs' own self-serving and subjective declarations of good faith in filing this complaint that has no basis in fact or law does not spare them from sanctions.[92]

At the hearing on the Defendants' motion for sanctions, the court asked Plaintiffs repeatedly to explain their basis for filing this suit. Mr. Baron stated that Plaintiffs believed they were simply exercising their constitutional rights and they were not acting with malice. Mr. Margetis testified that he acted purely on his own beliefs that a wrong had occurred. However, it is insufficient that a party's "subjective belief and purpose are innocent; it is also necessary that such mental state be based upon reasonably inquiry, objectively analyzed, into the basis for the facts alleged and into the law."[93]

Plaintiffs assert that the factual basis of some of their claims is that Judge Jernigan fabricated receipt of a death threat and then named John Margetis and Jeffrey Baron as potential suspects to the Marshals Service in retaliation for their reporting to the media her allegedly illegal actions. The court specifically asked Mr. Margetis what the basis for this specific allegation is, and Mr. Margetis simply insisted that it was his belief. Mr. Margetis was also asked

---

[91] Fed. R. Civ. P. 11 advisory committee's note (1993).
[92] *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003) ("A good faith belief in the merits of a case is insufficient to avoid sanctions.")
[93] *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1270 (7th Cir. 1993).

what media had reported on his allegations of criminal conduct against Judge Jernigan, and Mr. Margetis was unable to provide any evidence that any media has published a report based on his statements.  Also during the hearing, Mr. Margetis accused Judge Furgeson of having the Marshals follow him. When asked what makes him think Judge Furgeson asked the Marshals to follow him around, he responded that it was simply his belief. Plaintiffs were unable to put forth any evidence that supports their claims, and it is clear that they did not perform an inquiry reasonable under the circumstances before filing their claims and making these allegations and ignored unfavorable law relating to the Defendants' immunity to civil liability.

The court notes that Plaintiffs offered completely inconsistent testimony, however, when directly asked whether they thought they could file a lawsuit based on their subjective beliefs.  In response, Mr. Margetis stated that he did not believe that was the case and that he believed the evidence and exhibits he brought to the hearing would show that a pattern of illegal activities had occurred. Plaintiffs' contention that they can establish a "pattern" by providing witnesses that also have complaints against these Defendants does not support their allegations and does not constitute an inquiry reasonable under the circumstances to support their subjective beliefs.

### a. It is not sufficient to find others who also have grievances against a defendant to support the claims asserted.

When questioned about what inquiry he performed before filing this suit, Mr. Margetis insisted that Plaintiffs "talked to lots of people, lots of people contacted us. And I can—it's again, judicial—it's public record."[94] Plaintiffs argued that by gathering complaints of others about the same two judges' actions in other instances, they had performed an inquiry reasonable under the circumstances to support their claims. The legal and (sparse) factual contentions

---

[94] This statement also seems to support the court's conclusion that Plaintiffs are attempting to assert a complaint based on the Defendants' judicial actions.

asserted by Plaintiffs are not supported by the testimony of others who also believe Defendants have acted improperly in other completely distinct situations.

At the hearing on the Defendants' motion for sanctions, Mr. Margetis never answered the court's question regarding an evidentiary basis for the crimes alleged against the Defendants in his complaint. He simply stated that he talked to other people who agreed with him that he and his mother were somehow mistreated, and he located other litigants who had cases in front of Judge Furgeson and/or Judge Jernigan and who had complaints about how their cases were handled. Occasionally, unhappy litigants will blame the judge.

Plaintiffs offered the testimony of Mptanashi Tayari Garrett about her grievances with Judge Jernigan and attempted to offer the testimony of Andrea Arnold regarding her grievances with Judge Furgeson. When asked the significance of Ms. Arnold's testimony, Mr. Margetis explained it would show a pattern.

Even if the court were to assume the veracity of the testimony and the evidence provided by Plaintiffs related to these two witnesses and construe it in the light most favorable to Plaintiffs, what happened to these witnesses is not relevant to claims asserted by Plaintiffs in *this* suit against these Defendants, and tracking down these individuals does not constitute an inquiry reasonable under the circumstances for asserting Plaintiffs' claims. Further, Plaintiffs have no standing to assert any claims based on what may have happened to any other individual.

### b.  It is irrelevant that others recommended Plaintiffs file this suit.

The final argument that Plaintiffs offered to support their contention that they had not violated Rule 11(b) was that numerous individuals, including some federal employees, told them to file this lawsuit. The fact that any individual advises someone to file a lawsuit does not relieve the person filing the lawsuit of his obligation to comply with the mandates of Rule 11. ""The

person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and in most situations should be sanctioned for a violation."[95] The court pointed out to Plaintiffs during the hearing that when they signed the complaint, they were certifying that they had conducted a reasonable inquiry under the circumstances, and Mr. Margetis replied that they had and that's why federal officials had allegedly told them to file the instant suit. An individual can seek advice from anyone, but someone's advice to file a lawsuit, even if that person works for the government, does not satisfy the party's obligation to conduct an inquiry reasonable under the circumstances and to have an evidentiary basis for the allegations made in that lawsuit.

Plaintiffs had ample time available to prepare their original complaint in this case. In fact they had filed similar complaints two times previously based on these same allegations beginning in May 2012. Plaintiffs offered no plausible legal argument and offered no factual allegations to support their claims. There are no complex legal or factual issues raised in the case because there are simply no viable legal or factual issues asserted by Plaintiffs. The only factor weighing in Plaintiffs' favor is their *pro se* status. But Plaintiffs demonstrated that they are more than capable of researching the law through the documents that they have filed in this case. Plaintiffs have also demonstrated their willingness to try and avoid the law by arguing that their claims are not based on official actions.

### iii. *Plaintiffs persisted in pursuing this suit even after they were warned that the claims were unsustainable.*

Plaintiffs were advised that federal judges have absolutely immunity from civil claims stemming from their actions taken in their official capacity as judges and that the United States Marshals have absolute or qualified immunity for actions taken as part of their investigation

---

[95] Fed. R. Civ. P. 11 advisory committee's note (1993).

concerning the death threat made to Judge Jernigan.[96]  Plaintiffs have amply demonstrated that they are able to research the law and they appear to be capable of understanding what the law is. They also failed to heed warnings that they would be subject to sanctions for pursuing this frivolous and malicious campaign and have not shown any intent to discontinue it.

## V.    SANCTIONS

Sanctions are warranted in this matter because Plaintiffs violated Federal Rule of Civil Procedure 11(b)(1) and 11(b)(3) by filing a complaint with an improper purpose and without any evidentiary or legal basis. Plaintiffs have been given notice and an opportunity to respond as required by FED. R. CIV. P. 11(c)(1). Plaintiffs filed an objection both to the recommendation of sanctions in the Report and Recommendation of the United States Magistrate Judge (Dkt. 27) and Defendants' Motion for Sanctions (Dkt. 34). Plaintiffs had over seventy days' notice of this court's intention to hold a hearing on the matter.  Plaintiffs filed a brief, appeared, and responded at the hearing.  The hearing lasted over five hours.

Plaintiffs later filed, on May 19, 2014, fifty-nine days after the hearing, an "Emergency Motion Filing This Supplemental Objections to Defendant's Motion for Sanctions" (Dkt. 93) arguing that Defendants failed to comply with the "safe harbor" provision of Federal Rule of Procedure 11(c)(2). Plaintiffs contend that because Defendants litigated their motion to dismiss before filing a motion for sanctions that Defendants are not entitled to sanctions. Plaintiffs failed to raise this argument during the ample time in which they had to respond to the motion for sanctions and at the hearing on March 21, 2014. Nonetheless, Plaintiffs' argument is without merit. Rule 11(c)(2) requires service of a motion for sanctions 21-days before filing "to give the

---

[96] Dkt. 34-19; *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989) ("Judges are absolutely immune against an action for damages for acts performed in their judicial capacities, even when such acts are alleged to have been done maliciously or corruptly.") (internal quotation marks omitted).

parties at whom the motion is directed an opportunity to withdraw or correct the offending contention."[97] Informal notice is not sufficient.[98] In this instance, Defendants complied with Rule 11(c)(2)'s notice requirement.[99] Defendants served their motion for sanctions on Plaintiffs on September 18, 2013. The motion was filed with the court on October 18, 2013, thirty days later. After they were served with a copy of the motion for sanctions, Plaintiffs continued to pursue their claims by filing an objection to the Report and Recommendation of the United States Magistrate Judge[100] rather than withdrawing any of their claims.[101] Plaintiffs went on to respond to the sanctions motion and assert their claims both in writing and at the hearing. At no point did Plaintiffs attempt to voluntarily dismiss their claims.

Plaintiffs have failed to make any showing that their claims were not brought for an improper purpose or that they conducted an inquiry reasonable under the circumstances to determine that their claims had evidentiary or legal support. Plaintiffs cite to *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 580-81 (5th Cir. 2008) to support their argument that sanctions are not warranted in this instance. Plaintiffs argue that the court cannot attempt to read their minds to determine that they filed this suit for an improper purpose. However, the court in *Maxxam* explained that courts should generally not sanction *nonfrivolous* representations that are well grounded in fact and law, even if they were subjectively brought with an improper purpose or ulterior motive. *Maxxam* holds that "the court must focus on objectively ascertainable

---

[97] *In re Pratt*, 524 F.3d 580, 586 (5th Cir. 2008).
[98] *Id*.
[99] *See* Dkt. 28. Prior to the filing of this suit, Defendants also informally warned Plaintiffs that if they persisted, sanctions would be sought. However, Defendants do not rely on this informal warning as compliance with Rule 11(c)(2) but on the service of the actual motion for sanctions.
[100] Dkt. 30.
[101] *See Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010) (After the termination of an action, a court may nevertheless 'consider collateral issues.'"); *Thomas v. Phillips*, 83 F. App'x 661, 661-62 (5th Cir. 2003) (holding that plaintiff "had an absolute right to have his suit dismissed" under Rule 41(a)(1) notwithstanding a pending recommendation by the magistrate judge that the complaint be dismissed on the merits).

circumstances that support an inference that a filing harassed the defendant or caused unnecessary delay . . . [P]urely subjective elements should not be reintroduced into the determination concerning 'improper purpose.'"[102] Plaintiffs also cite to *Jenkins v. Methodist Hospitals of Dallas, Inc.*, 478 F.3d 255, 264 (5th Cir. 2007) to support their argument that they should not be sanctioned for a perceived improper motive. In *Jenkins*, the court explained that while "the standard under which the attorney is measured [under Rule 11] is an *objective*, *not subjective*, standard of reasonableness under the circumstances . . .an attorney's good faith will *not*, by itself, protect against the imposition of Rule 11 sanctions."[103] Plaintiffs' situation is distinguishable from these two cases because their representations are entirely frivolous. The court does not have to be clairvoyant to see that the suit was intended to harass Defendants and cause unnecessary delay, even though Plaintiffs had previously been told that their claims were without merit. Plaintiffs' purported good faith in bringing the claims does not reduce their obligation to comply with the Federal Rules of Civil Procedure.

Plaintiffs argue that the court should hesitate to sanction them when their case was dismissed under Rule 12(b) because they have not had an opportunity to present any evidence to the court. In *Tahfs*, decided before the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the court noted that, "[a]t the pleading stage in the litigation, ordinarily there is little or no evidence before the court at all, and such facts as are alleged, must be interpreted in favor of the nonmovant."[104] The court in *Tahfs* also pointed out that making a determination that a complaint is filed for an improper purpose, is unwarranted by existing law, or lacks evidentiary support "is difficult when there is nothing before the court

---

[102] *F.D.I.C. v. Maxxam, Inc.*, 523 F.3d 566, 581 (5th Cir. 2008).
[103] *Jenkins,* 478 F.3d at 264.
[104] *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003)

except the challenged complaint."[105] But the *Tahfs* court also pointed out that "the central

purpose of Rule 11 is to deter baseless filings in district court, and courts must be wary of

plaintiffs who make baseless allegations . . . in an effort to survive the early stages of

[litigation]."[106] Here, Plaintiffs have admitted that they have done exactly that—Plaintiffs

contend that they believe they could show that they have a viable claim if they could only get

discovery. Further, *Tahfs* is distinguishable from this case in that the plaintiff in *Tahfs* had

directly interacted with the court and was not attempting to allege the claims of others as Mr.

Margetis and Mr. Baron are.

Plaintiffs also cite *Amphenol v. T&M Antennas, Inc. v. Centurion Int'l, Inc.*, No. 00 C

4298, 2001 U.S. Dist. LEXIS 13795, at *14-15 (N. D. Ill. Sep. 5, 2001) to support their argument

that sanctions should not be imposed until they have had a full chance to develop their proof. The

court in *Amphenol* noted that "Rule 11 is violated only when it is patently clear that a claim has

absolutely no chance of success and that all doubts should be resolved in favor of the signer."[107]

It is patently clear that Plaintiffs' claim has absolutely no chance of success for all the reasons

articulated in this order and in the Magistrate Judge's Report and Recommendation.

The fact that Mr. Margetis and Mr. Baron have failed to plead a plausible claim for relief

under Rule 12, on its own, is not what subjects them to sanctions in this instance. Sanctions are

warranted because their derogatory claims are entirely baseless and were brought for an

objectively ascertainable improper and harassing purpose with nothing except Plaintiffs' own

ramblings for support and in spite of warnings that the Defendants would seek such sanctions if

Plaintiffs continued to pursue these claims. Plaintiffs show no intention of discontinuing their

---

[105] *Id.* at 594.
[106] *Id.* (internal quotation marks and citations omitted).
[107] *Amphenol v. T&M Antennas, Inc. v. Centurion Int'l, Inc.*, No. 00 C 4298, 2001 U.S. Dist. LEXIS 13795, at *14-15 (N. D. Ill. Sep. 5, 2001) (citing to Wright & Miller, Federal Practice and Procedure: Civil 2d § 1335, at 88).

crusade. Under these circumstances, the court finds that the least severe sanction adequate to the purpose of Rule 11 is to require Plaintiffs to reimburse Defendants for their attorneys' fees and costs and to enjoin Plaintiffs from filing any further pleadings in any court asserting claims against these Defendants without first seeking leave of this court. See Fed. R. Civ. P. 11(c)(2)(4).

## A. Attorneys' fees

Monetary sanctions are necessary in this case because mere dismissal of Plaintiffs' claims will not deter them from continuing to pursue these allegations.[108] In fact, Mr. Margetis's claims against Judge Jernigan in the adversary proceeding filed in his mother's bankruptcy case were dismissed and yet he continued to pursue similar allegations against Judge Jernigan in this case. While Mr. Baron characterizes the actions taken by Plaintiffs when they allowed the suit filed in the United States District Court for the District of Columbia to be dismissed for want of prosecution and in voluntarily dismissing their initial suit in this court as harmless and "very economical," the reality is that "[a] litigious plaintiff pressing a frivolous claim, though rarely succeeding on the merits, can be extremely costly to the defendant and can waste an inordinate amount of court time."[109] Plaintiffs' actions have been anything but economical. Each time Plaintiffs filed a frivolous suit it has cost the court system and Defendants significant time and expense to respond.[110] In fact, Plaintiffs' filings in just this action have occupied an unwarranted amount of this court's time in addressing the numerous motions filed by Plaintiffs (several of them captioned as "emergency" motions, requiring the court's immediate attention) and preparing for and conducting the sanctions hearing, which lasted over five hours.

---

[108] *See Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986) ("Sanctions may be necessary because often dismissal alone will not faze a venomous litigant bent on disrupting the judicial system and committed to employing the legal process as a means to torment his enemies.").

[109] *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980).

[110] *See* Dkt. 34 at 14-15.

The court finds that monetary sanctions are warranted in this matter to deter Plaintiffs (and those similarly situated) from continuing to pursue these frivolous and malicious allegations against Defendants. Federal Rule of Civil Procedure 11(c)(4) provides that "if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation" may be ordered. Defendants have moved for reimbursement of their attorneys' fees and other expenses incurred as a result of Plaintiffs' actions, and the court holds that, in this instance, requiring Plaintiffs to compensate Defendants for their reasonable expenses and reasonable attorneys' fees is the least severe sanction to effectively serve the purpose of Rule 11.[111] Accordingly, Defendants are **ORDERED** to file the proper documentation with the court to seek reimbursement for up to $25,000 in attorneys' fees and costs. The court will review Defendants' request and will determine the amount for which Mr. Margetis and Mr. Baron will be jointly and severally liable.

### B. Pre-filing injunction

The court also finds that monetary sanctions alone will be insufficient to protect Defendants and the court from Plaintiffs' vexatious filings.[112] "A district court has jurisdiction to impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation."[113] Indeed, "[f]ederal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions."[114] "In

---

[111] *See Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 879 (5th Cir. 1988) ("What constitutes 'reasonable expenses' and a 'reasonable attorney's fee' within the context of Rule 11 must be considered in tandem with the rule's goals of deterrence, punishment, and compensation.").

[112] *See Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 360 (5th Cir. 1986) ("[W]here monetary sanctions are ineffective in deterring vexatious filings, enjoining such filings would be considered.").

[113] *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008).

[114] *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984).

determining whether it should impose a pre-filing injunction . . . a court must weigh all the relevant circumstances, including the following four factors: (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions."[115] "A pre-filing injunction must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants."[116]

> *(1)     The Plaintiffs' history of litigation, in particular whether they have filed vexatious, harassing, or duplicative lawsuits.*

Plaintiffs have now filed three separate lawsuits asserting essentially the same baseless allegations against the Marshals, Judge Jernigan, and Judge Furgeson. Indeed, Mr. Margetis began this crusade even earlier when he participated as a party in the adversary proceeding against Judge Jernigan in his mother's bankruptcy case. Further, Plaintiffs have engaged in dilatory tactics to prolong the pendency of this action (despite their protestations that they simply want their day in court) that have caused both the court and Defendants to spend an undeserved amount of time responding. Even setting aside Plaintiffs "economical" tactics in filing and not prosecuting an action in the D.C. district court, and the filing and voluntarily dismissal of their initial claim in Texas courts, Plaintiffs have attempted to delay these proceedings by (1) choosing not to respond to Defendants' motion to dismiss, despite being granted additional time in which to do so (2) filing an amended complaint out of time and without first seeking leave of court, and (3) seeking continuances each time the court actually attempts to resolve an issue in this case. In all, Plaintiffs have filed fifteen motions in this case, including six that were captioned as "emergency" motions seeking the court's immediate attention.

---

[115] *Baum*, 513 F.3d at 189.
[116] *Id.* at 187 (internal quotation marks omitted).

Plaintiffs have demonstrated their insistence on pursuing this crusade. Further, in the time since the hearing on March 21, 2014, Plaintiffs have continued to file "emergency" motions with the court. "Unnecessary complaints sap the time of judges, forcing parties with substantial disputes to wait in a longer queue and condemning them to receive less judicial attention when their cases finally are heard."[117]

    (2)        *Whether the Plaintiffs' had a good faith basis for pursuing the litigation, or simply intended to harass.*

Plaintiffs have been unable to show any objectively good faith basis for pursuing this litigation. It is clear that these claims originate from Plaintiffs' personal vendetta against these Defendants, who Plaintiffs, without reason, believe to have collaborated against them. Plaintiffs have engaged in a pattern of frivolous lawsuits brought against these Defendants intended to harass Defendants and find an outlet in which to publish their unfounded claims.

    (3)        *The extent of the burden on the courts and other parties resulting from the Plaintiffs' filings.*

The extent of the burden on the courts and on Defendants resulting from the Plaintiffs' filings has been significant.

    (4)        *The adequacy of alternative sanctions.*

The court does not believe that mere dismissal of Plaintiffs' complaint, or even the imposition monetary sanctions will be adequate to prevent Plaintiffs from continuing to consume judicial resources by pursuing these claims.

The court finds that a pre-filing injunction is warranted to prevent Plaintiffs from continuing to abuse the judicial system by pursuing claims against these Defendants. This sanction is appropriate because Plaintiffs are "abusing the judicial process by such filings and

---

[117] *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987).

[are] delaying the consideration of meritorious claims."[118] Plaintiffs are therefore **PROHIBITED** from filing any additional complaints or documents in any court against the Defendants named in this suit without first seeking leave of this court.[119] The court finds that this prohibition is narrowly "tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants."[120]

### VI.    CONCLUSION

Defendants' Motion for Sanctions (Dkt. 34) is **GRANTED**. Plaintiffs are **PROHIBITED** from filing any additional complaints or documents in any court against the Defendants named in this suit without first seeking leave of this court. Further, Defendants are **ORDERED** to file briefing regarding their attorneys' fees and costs with the court on or before October 28, 2015. The Defendants shall have until November 13, 2015 to file a response.  The court will assess a reasonable attorneys' fee and reasonable costs to be paid by Plaintiffs and for which they will be jointly and severally liable.

Plaintiffs' Emergency Motion to Continue (Dkt. 82) is **DENIED**; Plaintiffs' Motion for Leave to File Excess Pages (Dkt. 84) is **DENIED**; Plaintiffs' Motion for Clarification (Dkt. 88) is **GRANTED**; Plaintiffs' Emergency Motion for Docketing (Dkt. 92) is **DENIED**.

IT IS SO ORDERED.
            **SIGNED this the 29th day of September, 2015.**


_Richard A. Schell_
_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE

---

[118] *Murphy v. J.A. Collins*, 26 F.3d 541, 544 (5th Cir. 1994).

[119] *See Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002) ("We have upheld an order enjoining a litigant from bringing any future litigation on any claim arising from a particular fact situation, where the litigant was abusing the court system by harassing his opponents.").

[120] *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008) (internal quotation marks omitted).